ROZELLA McDONALD, APPELLEE, V. FOSTER BROWN, APPELLANT.

FILED JANUARY 24, 1912.    No. 17,262.

1. **Bastardy:** NATURE OF PROCEEDING. Bastardy proceedings are civil and not criminal in their nature.

2. ———: EVIDENCE. The written examination of the complainant before the justice in bastardy proceedings may be given in evidence at the trial by either party.

3. ———: INSTRUCTIONS: VARIANCE. Where the plaintiff charged that the intercourse which resulted in her pregnancy was had upon September 28, and the evidence tended to show that if defendant was guilty at all it must have taken place on September 30, an instruction that the jury might find the defendant guilty whether the intercourse was had on either date is not erroneous.

4. **New Trial: NEWLY DISCOVERED EVIDENCE.** To entitle a party to a new trial on the ground of newly discovered evidence, it must appear that the applicant could not in the exercise of due diligence have discovered and procured such evidence at the trial. It must further appear, where the alleged newly discovered evidence is cumulative in its nature, that it is of such a weighty character as would probably change the result of the trial. *Hoffine v. Ewings,* 60 Neb. 729.

5. **Appeal: MISCONDUCT OF COUNSEL: REVIEW.** In order to review misconduct of counsel during the trial as a ground of error, the alleged misconduct must have been called to the attention of the district court, an adverse ruling had, and an exception taken.

6. Evidence examined, and *held* to sustain the verdict.

APPEAL from the district court for Pawnee county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Story & Story* and *Burkett, Wilson & Brown,* for appellant.

*C. F. Reavis, contra.*

LETTON, J.

This is an appeal from a judgment of filiation. The first complaint is that the court erred in admitting in evidence the examination of plaintiff taken before the justice of the peace. The statute, however, provides: "At the trial of such issue the examination before the justice shall be given in evidence." Comp. St. 1893, ch. 37, sec. 5. This question was raised in *Stoppert v. Nierle,* 45 Neb. 105, and it was held that either party is entitled to offer the whole examination in evidence. In the opinion it is said that the words of the statute that the examination before the justice shall be given in evidence "are plain and direct in their import and no interpretation of them is necessary to ascertain their meaning. The statement is that 'the examination before the justice shall be given in evidence,' and to us it clearly authorizes its use by either party and its reception when offered by either." *State v. O'Rourke,* 85 Neb. 639.

We think what is said in the *Stoppert* case also disposes of the alleged error in the refusal of the court to give appellant's instruction No. 4 limiting the force and effect of this evidence. *Dodge County v. Kemnitz*, 28 Neb. 224; *Morgan v. Stone*, 4 Neb. (Unof.) 115.

As to the complaint made of the limitation of cross-examination and in striking out certain statements made by appellant to the witness Mrs. Dickenson: In the circumstances of this case neither the exclusion of this evidence nor the limitation of the cross-examination could be prejudicial, since the matters involved were otherwise proved, and taking all the evidence together were really immaterial.

It is also contended that the court erred in giving instructions Nos. 1 and 4. No. 1 told the jury that a proceeding in bastardy is a civil and not a criminal action, and that its purpose is to establish the parentage of the child and to provide that the father shall support it. This is a correct statement of the law. The gist of instruction No. 4 that, if the jury believed that all the material facts were proved against the defendant, they should find defendant guilty whether the sexual intercourse was had on either September 28, 29 or 30, 1909, is clearly correct, because proof of the exact date upon which the intercourse was had is not essential.

The principal contention is that the verdict is not supported by the evidence and is contrary thereto. The evidence is somewhat peculiar. The plaintiff and her father and mother testify that the defendant, driving a dun and a black horse hitched to a buggy, came to their home on the evening of September 28, 1909, about sundown, and invited complainant to take a ride, that she consented, and they departed, driving southward on the section-line road west of their house. Plaintiff testifies that, after proceeding about a half mile from home, he took her from the buggy, and that intercourse was there had. All three of these witnesses say that they were gone from an hour to an hour and a half, and got back between 8 and 9

o'clock, but it is not shown how the time of absence or of return was fixed in their minds. They also say that when he first came he spoke of having visited the plaintiff's sister, who was teaching in Kensington, Kansas, the previous week, and that they told him she had written he had been there. Three other witnesses, apparently disinterested, testified that one evening in the latter part of September, 1909, they saw the plaintiff and the defendant in a buggy driving southward from the McDonald home on the section-line road referred to, at about the same time in the evening as testified to by the plaintiff. Plaintiff testifies that after this occurrence she did not again see the defendant until about a month later, when she and her mother in driving past the home of his father met him and there informed him that she was pregnant as a result of the intercourse; that he then promised to come to their home that night and talk the matter over, but that he failed to do so, and afterwards left the state. The child was born June 20, 1910.

To meet this testimony the defendant proved, without dispute or contradiction, that on the 28th of September he was at Kensington, Kansas, a distance of over 150 miles from the plaintiff's home; that he returned to Pawnee county in the afternoon of September 29, and that night went with his father to his home, which is a few miles north and west from where plaintiff resided. The next day he took his father's team and left home in the morning to attend the Turkey Creek fair, which is held in Kansas, about 6 or 7 miles south of the town of DuBois, Nebraska; that he spent part of the day at the fair, and left in the afternoon. So far, his movements seem to be positively determined. What took place after this is the material inquiry. Defendant testifies that he left the fair intending to go directly to DuBois; that he reached DuBois about sundown, and afterwards registered at the hotel and took supper there. From there he drove straight home, a distance of about 6 or 7 miles westward and north, arriving home about 8 or 9 o'clock that night. The

landlord and a waitress in the hotel testified in corroboration, though both were somewhat uncertain as to the exact time they saw defendant. The landlord said it was about 6 o'clock, and afterwards that he came in a little late, a little after 8; that when he came out of the dining room the hotel was lighted, and that he stood there and talked for half an hour afterwards. The waitress testified that Brown had his supper after the others; that the lamps had been lighted when he came, and that he was the last one in for supper. Another witness testified that he was with Brown in the afternoon at the fair, and saw him about sundown drinking at the town pump in DuBois; that it was 6:30 when the witness left DuBois, and he saw Brown there 8 or 10 minutes before, which was about dark. Defendant further testified that he visited Miss McDonald's sister in Kensington, Kansas, a short time before he came home. He denies going to McDonald's home or meeting any of the witnesses who testify they saw him in company with the plaintiff. He also says that he first learned that Miss McDonald charged him with being the father of her unborn child on the Wednesday after the November election, and that he left the state the next day and remained away until the latter part of April, 1910. Defendant's home is about 6 miles west and 2 miles north of DuBois. McDonald's place is about 7 miles west of DuBois, and the Turkey Creek fair was 7 miles south of that town. On the afternoon of September 30, Fred Brackett, another witness, who had attended the Turkey Creek fair, was driving on a road 2½ miles west of the straight road from Turkey Creek to DuBois, when he was overtaken by the defendant. After he passed this witness, the defendant drove westward in the direction of McDonald's, but the road did not run through, and he was compelled to drive back to the road running north, where he again passed this witness. Defendant also testifies to this.

The jury evidently believed that the defendant did not reach Pawnee county until September 29, and that the

plaintiff and the witnesses who testified that they saw the defendant on the evening of the 28th were mistaken as to the exact date. It also seems probable that, in weighing the testimony on behalf of the defendant, they considered the facts; that he was positively contradicted as to the color of the team he drove; that he first testified that after the fair he intended to and did drive directly to DuBois, but that, just before Mr. Brackett testified, he admitted that when he left the fair he was seen about 2½ miles west of DuBois driving west towards McDonald's till the road was blocked, and he then returned and drove north again and only determined to go to DuBois after he had passed Brackett the second time; as well as considering a number of other inconsistencies found in the defendant's testimony. Another circumstance, which no doubt had effect, is that defendant left the state immediately after he was accused. Whether the defendant went to DuBois that night or not, we think the evidence sufficiently justified the jury in believing that the defendant had sexual intercourse with the plaintiff on the evening of September 30, and that he was the father of her child.

It is next complained that the court erred in refusing a new trial on account of the misconduct of plaintiff's counsel. In this connection it is stated that the witness Davis, who testified for the defendant, was permitted to refresh his recollection from the hotel register. This was on March 15, 1911. The register was not introduced in evidence. That the next day, the witness not being present, plaintiff's counsel called for the register, and, finding it was not there, asked in a loud voice for a subpœna to be issued for Davis, which the court allowed, but no effort was made to subpœna Davis or to procure the register. It is also assigned that further misconduct of counsel took place by referring to the name upon the hotel register as evidently erased and making like statements during his address to the jury. The evidence of Davis, who was landlord of the hotel, showed that the name was blurred and bore some appearance as if an erasure had been made.

The evidence is not clear as to this, but Davis testified that the blurring or obscuring was caused by handling of the register by curious individuals after rumors of this case and of Brown's defense had become public property in the little village. The record does not indicate that the attention of the court was called to any claimed misconduct of counsel at the time, and it is not contended that anything said by the district judge prejudiced the defendant in any way. We can see no error here. The register was in the hands of defendant's witness, and might have been introduced in evidence by him if properly identified.

It is also contended that the motion for a new trial upon the ground of newly discovered evidence should have been sustained. In this motion it is alleged that since the trial defendant has discovered that one Miller, a clerk in a store at Seneca, Kansas, and one LaRue, a student at Lawrence, Kansas, were present in the hotel in DuBois at the time defendant took supper there, saw defendant there, and will testify to these facts. The affidavits of these persons are attached to the motion, and are to the effect that they attended the Turkey Creek fair, and that evening drove to DuBois to attend a dance at the DuBois opera house; that about dusk they went to the hotel for supper, and that a few moments before they left the dining room the defendant came in. The time they went into or left the dining room is not stated. The defendant must have thought that it was essential to his defense to establish his whereabouts on the evening of September 30, 1909. He produced the hotel proprietor, the waitress, and Hunsicker to show this fact, but apparently made no attempt to discover the identity of the two young men in the dining room until after the trial. He testifies he saw these men in the dining room, but did not know their names until given to him by Miss Nedela, the waitress. If it was important to him to have the evidence of the other witnesses as to his presence in the hotel at that particular time, it was equally necessary to have that of these men, unless he was prepared to take the

chance that the evidence of these witnesses would not be needed. The testimony offered is only cumulative in its nature, and not to such a degree that it is likely to change the result. We think that the district court did not abuse its discretion in refusing to grant a new trial on the ground of newly discovered evidence.

In conclusion, while the condition of the testimony is unusual, we think the well-known difficulty in fixing the exact time of an event by witnesses whose attention has not been called particularly to the time of its occurrence until months afterwards, with nothing special happening at or near the time to call their attention to the particular day or hour, explains to some extent the discrepancy in regard to dates and to the hour of the day. It is perhaps true that nothing in the realm of memory is so illusive and uncertain as the element of the lapse of time. This is pointed out in an interesting manner by Mr. Moore in his work on Facts, vol. 2, sec. 845 *et seq.* We are further of opinion that the contradictions and inconsistencies in the defendant's own testimony as to his doings on the afternoon and evening of September 30, the admitted fact that the next day after being accused he left the state and remained away for months, and the testimony as to his being seen with the girl under circumstances similar to those which she describes are sufficient to sustain the verdict. The defendant may be innocent, but the preponderance of evidence seems to justify a verdict based upon a contrary view.

The judgment of the district court is therefore

AFFIRMED.