HOUGHTON W. KENYON V. STATE OF NEBRASKA.

FILED NOVEMBER 16, 1923.   No. 23254.

1. **Receiving Stolen Goods: USING EMBEZZLED STOCK CERTIFICATE.** One who participates in using, as collateral security to a note which he signs either as principal or surety, a stock certificate which he knows to be the property of a third person, and to have been embezzled from the latter, receives a benefit in the transaction and is guilty of receiving embezzled property, if he intends thereby to deprive the owner of the same.

2. Criminal Law: DENIAL OF CONTINUANCE. Ordinarily the denial of a continuance is within the sound discretion of the trial court, and no reversal can be had therefor unless such discretion has been abused. *Held* in this case that there was no error in refusing the continuance requested.

3. ———: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. A new trial will not ordinarily be granted upon newly discovered evidence which merely tends to discredit some of the state's witnesses.

4. ———: INSTRUCTIONS. Where the instructions as a whole correctly advise the jury as to the law upon a point in issue, a single instruction which might by itself be misleading will not be permitted to work a reversal of the judgment.

5. ———: SECONDARY EVIDENCE: FOUNDATION. A wide discretion is permitted to the trial court in the matter of foundation required for the introduction of secondary evidence of the contents of a writing not produced; and where, in addition to testimony on the part of the one last known to have had such writing in his possession to the effect that he had destroyed it or misfiled it, and believes it lost or destroyed, the objecting party himself testified to the substance of said writing without conflict as to the particulars, the reception of a proved copy was not erroneous.

ERROR to the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Leonard A. Flansburg, Bernard G. Westover* and *Frank M. Tyrrell,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE and DAY, JJ., SHEPHERD, District Judge.

SHEPHERD, District Judge.

This is a proceeding in error from the conviction of Houghton W. Kenyon on an indictment charging him with taking, receiving and converting to his own use 1,600 shares of the capital stock of the Bankers Fire Insurance Company, of the value of $16,000, the property of Otto H. Brockman and the Ceresco State Bank, knowing that it had been embezzled, and intending to deprive the bank and said Brockman of the same.

Among other things, the evidence tended to prove the following: Otto H. Brockman was the owner of 2,000 shares of the capital stock of the Bankers Fire Insurance Company, issued to him in a single certificate under date of December 17, 1919. The defendant Kenyon was the secretary of said company. Charles Maixner was its treasurer, and also the cashier of the Ceresco State Bank. Wishing to raise as much money as possible on said stock, Brockman applied to the company, acquainting both Maixner and Kenyon with his desire and authorizing them to sell it for him or to get him a loan on it. They encouraged him, but suggested that the stock be split up into certificates of different denominations in order to facilitate handling. Brockman assenting, Kenyon issued him one certificate for 1,600 shares and two for 200 shares each. These Brockman assigned in blank by indorsing them on the back in the presence of Kenyon. No sale was made, but on the 23d day of July, 1920, the Ceresco State Bank loaned Brockman $2,500 on his note, taking the stock as collateral, depositing stock and note together in its note case, and issuing its certificate of deposit for the money. Brockman put this certificate through his own bank at West Point. Later, in a conversation in regard to getting more money on the stock, Kenyon advised Brockman that he had counseled Maixner to permit the said certificate of deposit to be cashed, though the latter was loath to do so. He also told Brockman that his said stock was good for a loan of from $20,000 to $30,000. Maixner and Kenyon had an indebtedness on three notes at the American State Bank in Lincoln (to the latter or to an associated concern) amounting to $50,000 which had to be taken care of. Maixner abstracted the described 1,600-share certificate from the note case of the Ceresco State Bank and put it up with other securities as collateral to a new note for $50,000 to the American State Bank to replace the three described, the new note to be signed by himself and Kenyon. He signed it first and afterwards Kenyon went into the bank and signed it below him, apparently as a principal, as it lay upon the desk of a bank official for that purpose, with

the said certificate attached. Thereupon the note and stock
were kept by the last named bank and Brockman and the
Ceresco State Bank were deprived of said stock.

The theory of the state was that Maixner, being the
cashier of the Ceresco State Bank and having access to its
note case and vault, embezzled the stock in question, and
that Kenyon received and used it along with him in putting
through the acceptance of the $50,000 note above described,
and in discharging an indebtedness upon which both he and
Maixner were liable. The evidence strongly indicates that
Kenyon not only knew that the stock belonged to Brockman,
but knew that it had been embezzled, knew all about the
dishonest deal, and in fact connived with Maixner to put
the deal through for their joint benefit.

The evidence adduced is undoubtedly sufficient to sustain
the verdict and judgment in the trial court, provided the
taking and receiving on the part of the defendant above
set forth is sufficient to constitute a taking and receiving
according to the statute defining the crime charged, and pro-
vided of course that the trial was properly had, the evidence
properly received, and the jury properly instructed.

The Nebraska cases cited by the defendant, beginning
with *Chaplin v. Lee,* 18 Neb. 440, and ending with *Nelson
v. State,* 86 Neb. 856, do not support his contention that the
facts which the state's evidence tended to prove were not
sufficient to justify a finding that there was an embezzle-
ment. In the first of these cases there was no proof of the
existence of the fund charged to have been embezzled. In
another there was only a showing of indebtedness. And
in the others proof was totally lacking as to false appro-
priation, as to felonious intent, or as to felonious adverse
holding. No such absence of proof is found here. Evidence
was introduced tending to prove every essential element of
an embezzlement by Maixner. Nor should there be any
doubt that the defendant did the crime of receiving if he
knew that the stock attached to the note had been embezzled.
For, whether he signed as a principal or surety, he used
said stock and received a benefit from it. The benefit to

Kenyon v. State.

him, even if he was a surety, consisted in the lessening of his hazard by the use of the collateral. The evidence strongly tended to prove guilty knowledge on the part of the defendant Kenyon. The crime was well charged, and was defined in the instructions practically in the words of the statute. This is sufficient.

Defendant assigns as error that he was denied a continuance. Ordinarily the denial of a continuance is within the sound discretion of the trial court and no reversal will be awarded therefor unless it is clear that there has been an abuse of such discretion. Complaint is made that certain witnesses, Burtch, Brockman and Johnson, changed their testimony in material respects; that Burtch testified that the $50,000 note was given for other notes signed by Kenyon, though omitting to so testify on the previous trial; that Brockman testified that certain conversations were had with Kenyon or with Maixner and Kenyon together, when before he described the same as had with Maixner alone; and that Johnson testified that he had seen the stock in the Ceresco State Bank, though he testified before to the contrary. While this is disputed, it is quite apparent that there were material differences in the testimony of these witnesses. But what if there were? Granted, for the sake of the argument, that defendant was surprised, and that if he had been given time he could have produced testimony to the effect that the general reputation of these witnesses was bad, this would not have been enough to entitle him to a new trial. For a new trial is not ordinarily granted upon newly discovered evidence which merely tends to discredit some of the state's witnesses. *Ogden v. State,* 13 Neb. 436. Defendant had the benefit of impeachment of said witnesses by the record. He makes no showing of new evidence which would be likely, in the opinion of the court, to lead the jury to a different conclusion than that which it reached. The verdict and judgment are not to be set aside on this score.

When the trial was being had, Maixner was in the penitentiary serving a sentence for forgery, to which offense

he had pleaded guilty. There is some evidence in the record that he had been promised favor, if not clemency, by the attorney general then in office if he would testify in this case. As the attorney general was also a member of the pardon board, it was urged that a continuance should have been allowed, supposedly until lapse of time should change the condition. However, it is not contended that the attorney general offered him clemency or favorable consideration upon condition that he would give false testimony, or that he urged him to tell anything other than the truth. It appears that when sentence was passed upon said Maixner he received 20 years upon each count of a three-count information, to be served consecutively rather than concurrently. It had been intended by the attorney general, who acted in the matter, that his imprisonment should be for a total of 20 years only. At most, he promised to use his good offices in Maixner's behalf to shorten the time of his sentence accordingly. This does not impress the court as good reason for reviewing the ruling of the trial court. And we are the more certain of our ground in so holding because of the fact that the state did not use Maixner in making its case, but only called him on rebuttal after the defendant had sworn him upon his defense.

It is urged with much insistence that the trial judge committed reversible error in instructing the jury, first in refusing to specially warn it against Maixner's testimony, again in charging that the jury might take into account such things as are matters of common knowledge and experience, though not testified to, and finally in instructing that the matter of suretyship was immaterial except as between Kenyon and Maixner unless the former's intention was made known to the payee of the note at the time that it was signed. In view of the fact that Maixner was called by the defendant, as above pointed out, it is evident that the defendant is not in a position to complain because an instruction directing scrupulous care in weighing Maixner's testimony was not given. Indeed, the giving of such an instruction would have been highly improper, and a real

cause of complaint if the defendant had been minded to assign it as error.   Moreover, the cautions of the court in its instructions as to credibility were sufficient to meet every contingency.   There is no vice in the charge as to matters of common knowledge and experience.   We can perceive no possible harm in it, except by resort to the wildest conjecture.

A more serious objection arises in the court's instruction No. 12.   It is as follows:

"You are instructed that every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto, for value.   In this case it appears on the face of the note that the defendant signed the $50,000 note as a maker, and it is immaterial, except as between Maixner and Kenyon, that the defendant was a surety for said Maixner unless his intention to be only a surety was made known to the payee of the note at or before the time of signing the note."

Supposing that the defendant was merely a surety signer. In such case he might have been less, or more, careful to ascertain whether collateral went with the note and whether or not he was participating in using Brockman's stock as security.   To remove inquiry as to his suretyship in all respects from the jury would possibly deprive him of proper consideration in this respect.   This is the contention of defendant.   However, it is a contention of doubtful force. For it seems obvious that a person primarily liable on notes which it was necessary to replace would sign a note for that purpose as a matter of course and with little investigation or delay, while one who loaned his credit without expectation of profit and merely for accomodation would be particularly careful to know that there was collateral attached which would make his signing less hazardous.   The court further observes in this connection that, though the defendant was interrogated at great length by his own counsel, he at no time testified that he examined the note signed by

him with less care than he would have used if he had in-
tended to sign it as a principal.

Not only this, but, as we analyze the instruction, its object
was to advise the jury that whether the defendant was
a surety or a principal cut no figure if he knew that the note
carried the stock as collateral and that the stock had been
embezzled. It was not intended to keep the matter of
suretyship from the jury in so far as that matter might
have a bearing on the question of the knowledge of the de-
fendant as to the character of the collateral, nor could that
result have followed; for Kenyon was permitted to testify
at length to the effect that he was only a surety. And the
court in other instructions told the jury that they should
consider all of the evidence in determining whether every
essential element of the crime, including that of knowledge
of the embezzlement, had been established. Where the in-
structions as a whole correctly advise the jury as to the law
upon a point in issue, a single instruction which might by
itself be misleading will not be permitted to work a reversal
of the judgment.

Misconduct on the part of counsel for the state is next
assigned as error for which the judgment of the court should
be reversed. One of the attorneys for the state stated in
his argument that the indictment charged Mr. Kenyon with
receiving to his own use or benefit property which had been
embezzled by Charles Maixner, and went on to say: "When
he did that fraud, that was one of the most damnable prop-
ositions ever perpetrated upon that farmer up at West
Point." Thereupon defendant's counsel broke in with the
following objection: "Object to that; I except to the re-
mark of counsel that it was one of the most damnable frauds
perpetrated on Otto Brockman who bought that stock."
The court then stated that he thought the objection was
properly made and thereupon another of the state's attor-
neys said: "If the court makes that ruling, we will ask that
the jury disregard it." The court then said: "The jury will
understand that in the excitement or argument, if counsel
discusses questions, stating them as facts concerning which

there is no evidence received, that you are to disregard, and not take mere statements of counsel in place of the truth itself, and you will disregard this particular statement. I do not remember any evidence of fraud as to how the stock was originally sold." To this the attorney who was then upon argument said: "That is the conclusion I draw from the testimony, gentlemen." Defendant's attorney excepted to that. The state's attorney continued: "And still let me go on to the next sentence and I will show them why I draw that conclusion." And the attorney went on as follows: "There is evidence in this record to this effect—now bear with me—that this man Brockman bought $66,000 worth of stock; that he took 2,000 shares of it, 2,000 shares of that stock, $50,000 worth, to Mr. Maixner and Mr. Kenyon, and how much did he borrow on it? How much did he borrow on $50,000 worth of that stock? Do you know what they loaned him? Do you know what Mr. Kenyon and Mr. Maixner loaned him? A little measley $2,500, and that is the reason for my saying it was a damnable fraud there, at the time they sold him, or at the time they loaned the $2,500." To this counsel for the defendant again excepted, and the court said: "He is justified in commenting on the magnitude of the transactions. He can say what he thinks the $2,000 transaction about which there has been testimony is; he has got the right to state what he thinks the significance of it is. The exception I think is not well taken."

There are further complaints of statements made by counsel during the course of the argument. But in one of these the fact is denied, and in the others defendant failed to preserve exception. We do not regard them as of sufficient importance to discuss. Statements of fact concerning matters outside of the record should not only be avoided, but will frequently work reversal. In many states the rule is that such statements are presumed to be of prejudicial effect. Occasionally the trial court can do nothing to cure the error or to dispel the prejudice thus created in the mind of the jury. In such cases there is nothing to do but to send the case back for a new trial. However, in many instances

where counsel transgress in the heat of argument, a proper instruction on the part of the court is enough to prevent a mistrial. And we think that such is the case here, even if the state's attorney was at fault, which the record leaves in much doubt. In the first place, so far as the record itself discloses, it is patent that the attorney for the defendant himself introduced the subject of the sale of the stock by adding the words, "who bought the stock.". Nevertheless, upon the suggestion of counsel for the state, the court instructed the jury to disregard it, and the attorney who was arguing continued: "That is the conclusion I draw from the testimony." In doing. this it appears to the writer that he had reference to the remark which he had himself made, rather than that made by defendant's attorney. That this is a correct conclusion is shown by the subsequent statement of the attorney as appears in the lengthy excerpt heretofore quoted. The explanation seems to have satisfied the court and it satisfies us. In any event we think that the court used great care to protect the defendant from what may have at first appeared to be an improper statement on the part of counsel for the state, and that the defendant was fully safeguarded against any possible prejudice.

A copy of the $50,000 note in question was received in evidence on the theory that the original was lost and could not be produced. The defendant contends that no sufficient foundation was laid for the introduction of the copy, and that its reception was error.

At the outset, in considering this assignment, it is to be noted that the defendant himself admits that he signed such a note—of the same date and amount, to the same party, and with Maixner. He only asserts that he signed merely for the accomodation of Maixner, and that he did not see on the face of the note the notation of Brockman's stock as collateral; his excuse being that he had implicit faith in Maixner and did not look. Under these circumstances the reception of the evidence cannot be held to have been erroneous, particularly since in such a matter the court is vested with a generous discretion. If the substance of the

writing is testified to by the defendant, and so proved without conflict, a copy should, it would seem, be admitted in evidence with less technical foundation than is commonly required. *Larson v. State,* 92 Neb. 24.

But we think that the foundation was otherwise sufficient. Burtch had the note at the preliminary hearing, and took it away at that time. He had searched for it and inquired for it in all quarters where he thought it might be found. It was last in his possession, so far as anybody knows, and he testifies that he may have destroyed it when he moved to Omaha or he may have misfiled it. He further testified that he would say that it was either lost or destroyed. A wide discretion is permitted to the trial court in the matter of foundation required for the introduction of secondary evidence of the contents of a writing lost or destroyed. *Hapgood Plow Co. v. Martin,* 16 Neb. 27; *Bradstreet v. Grand Island Banking Co.,* 89 Neb. 590. All of the foregoing leads to the conclusion that the foundation laid was sufficient and that the copy of the note was properly received.

From a full consideration of the voluminous record and briefs, we are of opinion that the district court had the right view of the issues, and correctly and capably submitted them to the jury. We hold, too, that there was no reversible error committed upon the trial. The judgment is therefore

AFFIRMED.