WILLIAMS BROTHERS, INC., *v.* BRANNON.

Opinion delivered October 6, 1930.

*Buzbee, Pugh & Harrison,* for appellant.

*H. Jordan Monk* and *W. B. Sorrels,* for appellee.

BUTLER, J. The appellees, Lonnie Brannon and his wife, Delia Mae Brannon, were traveling along a county highway in Jefferson County on September 15, 1929, in a seven-passenger Packard automobile. The road was dusty and it was difficult to see further ahead than thirty or fifty feet. At a point a short distance from where this highway intersected with the Pine Bluff and Altheimer highway, Brannon saw just a few feet ahead an open ditch crossing the road. He estimated that at this time he was traveling about twenty-five miles an hour. When he saw the open ditch and applied his brakes, stopping his wheels from revolving, the momentum of the car was such that it leaped entirely across the ditch with the back wheels just beyond. The impact of the car upon the road-

way caused one of the casings to blow out and the car to roll backward into the ditch. The ditch was variously estimated from two to three feet wide and from two to three feet deep. It had sloping sides that enabled appellees' car to pass out of it by changing gear and putting it in low. The car remained in the ditch but a moment—only long enough to put it in low gear to pull it out.

After an examination of the car's condition—estimated at from five to ten minutes—Brannon went on toward his destination. The jar occasioned by this incident injured Brannon and his wife to some degree, for which injuries they brought suit against the appellant, Williams Brothers, Inc., alleging its liability on the theory that it had broken the bridge across the ditch and created a dangerous condition by removing the broken planking and throwing the timbers from the ditch, leaving it open. There was a trial before a jury and a verdict and judgment for the appellee, from which the appellant has duly appealed and here contends that the court erred during the trial of the case in permitting the introduction of incompetent testimony over its objection and exception, in its refusal to submit to the jury competent testimony, and in its declarations of law. The principal contention, however, is that the court erred in refusing to direct a verdict in favor of the appellant.

We pass over consideration of the questions involved in the action of the court regarding the introduction and exclusion of testimony and the declarations of law given to the jury, for the reason that a careful analysis of all of the evidence, viewing it in a light most favorable to the appellees, fails to establish the liability of the appellant. There is no intimation that the appellant was making any unlawful use of the highway, nor is it contended that the mere breaking of the bridge in question by the appellant and its failure to repair the same would render it liable; the contention in this case being that the conduct of the appellant after the bridge was broken in throwing the timbers and planks out to one side and leaving the

ditch open created a dangerous condition, thereby, by its voluntary act, creating a nuisance, in that such was a wrongful obstruction and impairment of the public highway.

There is a conflict in the testimony regarding the previous repair and condition of the bridge before its breaking is said to have occurred. The road overseer testified that it had been repaired in the spring of the year preceding the accident and was in good condition before it was broken down, and the person whose duty it was to keep up the bridges testified that the bridge in question had been repaired just a few days before it was broken, and that when so repaired it was a good bridge composed of proper timbers laid across and covered by "three or four ten or twelve-inch planks and one or two small ones" three inches thick. Other witnesses, among whom was one introduced by the appellees, stated that the bridge was made of poles laid across the ditch covered by two planks about twelve inches in width and two inches thick. A witness for the appellees, describing the bridge, stated: "It is just a two-plank bridge—just two planks there across it—a kind of low sway there all the time. Just some planks across some poles there—the planks were not broke but they swayed in. This condition had been existing all the year."

Appellees base their contention that the bridge was broken by appellant's truck on the testimony of Frank Hopson, Hugh Vance, W. S. Stewart and Jim Barbre, Stewart being the road overseer and Barbre the man charged with the duty of keeping the bridges in repair. Hopson testified that on an afternoon of some day "about the middle of September," about four o'clock, he passed across the bridge in question and it was then in the same condition it had been all the year. On returning the following morning he reached the bridge about seven o'clock and found the planks "broke in, scattered around first one place, then another—both planks busted up pretty

bad.'' He replaced the broken planks over or in the ditch and crossed and continued on his way.

The only other testimony directly relative to the breaking of the bridge was that of Hugh Vance, who, as he testified, ''about the 12th or 13th of September and about four or four-thirty o'clock in the afternoon'' was hunting squirrels in the woods adjoining the highway where the ditch crossed the road and about two hundred yards from it when his attention was attracted by a noise which he described as if made by the breaking of a plank. Looking in that direction witness saw a truck down in the ditch and a number of persons throwing timbers out of it. This truck remained at that place about five or ten minutes, passing on down the road after extricating itself from the ditch; that it was a truck belonging to the appellant. Witness at no time was nearer than 200 yards to the bridge.

Stewart, the road overseer, testified that the appellant's trucks were ''supposed to be the heaviest trucks that went over this road.'' Barbre stated that in the lower edge of the county on roads used by the appellant's trucks he would build bridges one day and find them broken the next, and that the appellant's trucks were the heaviest used on the highway.

Assuming that this evidence is sufficient to establish the fact that the incident witnessed by Hugh Vance was the initial breaking of the bridge in controversy, it fails to establish a basis from which the jury might reasonably infer that the voluntary acts of appellant's servants rendered more hazardous the condition of the ditch than that which resulted merely from the breaking of the bridge. It will be noted that Vance, the witness who saw appellant's truck in the ditch, was at no time nearer to the ditch than 200 yards and was in a wood. So he did not state and was unable to know what the conditions were when appellant's truck broke through the planking into the ditch and in what position the planks and other timbers would have been had the truck moved outward

from the ditch without any of the timbers being removed therefrom. Assuming that the appellant's truck broke the bridge at the time Vance saw it and that it was on the 12th or 13th day of September as estimated by Vance, a period of at least two days elapsed from the time the bridge was broken until the appellees' car crossed it, and there is no testimony showing the condition of the bridge at that time as compared with its condition immediately after appellant's truck passed over it. It cannot be said that the condition as testified to by Hopson as on the morning he first discovered the bridge broken was the same as that on the afternoon before. This was a county highway in a thickly populated county, and the evidence shows that it was frequently traveled. It therefore would be entirely unreasonable to assume that no other cars or trucks passed over the ditch from 4:30 in the afternoon to 7 o'clock of the following morning, for it is a matter of common knowledge that motor-driven vehicles travel the highways in great numbers and at frequent intervals both day and night.

The evidence shows that the bridge and ditch in question were both relatively insignificant and traffic continued along the highway after the breaking of the bridge without interruption and with practically the same ease as before. A rural mail carrier advised those in charge of the highway's maintenance of the breaking of the bridge, and several days passed before any steps were taken looking toward its repair, and after the condition of the ditch after the breaking of the bridge had been seen by the road overseer the situation was deemed not sufficiently dangerous to warrant the placing of any danger signal at that point. The evidence fails to show any dangerous condition of the highway caused by removal of broken timbers, but merely an impairment incidental to its use, for whether the act complained of, namely, the removal of the planks and timbers and throwing them to the side of the road, rendered the ditch more dangerous than it would have been with the planks not removed is a mere surmise.

As there is no substantial evidence tending to establish appellant's liability, the case is therefore reversed, as as the facts appear to have been fully developed, the cause is dismissed.