MARY SIMONSEN, APPELLEE, V. THEODORE M. THORIN ET AL., APPELLANTS.

FILED FEBRUARY 11, 1931. NO. 27505.

*Kennedy, Holland, DeLacy & McLaughlin,* for appellants.

*George B. Boland* and *J. C. Travis, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ.

DAY, J.

Mary Simonsen brings this action to recover damages for personal injuries received while riding as a passenger in an automobile driven by her husband which collided with a trolley pole obstructing the street. The trolley pole had been broken and knocked into the street by a delivery truck, owned and used in the grocery business of Theodore M. Thorin and driven by his son Theodore. Hereinafter, for convenience, Mrs. Simonsen will be designated as plaintiff and the Thorins as defendants. The record presents three assignments of error, which will be discussed in the order of presentation.

The first question presented by this case is the duty and liability of one who involuntarily and without negligence obstructs a street. This case was tried upon the

theory that the collision of the defendants' car which broke the pole and caused it to fall into the street was not due to any negligence on the part of the defendants. It is also true that the pole was not broken off and placed in the street by the voluntary act of the defendants. Simplified, the exact question here presented is whether or not it was the duty of the driver to remove the barrier or to remain at the scene of the accident and warn travelers upon the street of the danger, to prevent them from running into the pole. And if it was his legal duty to do so, whether he in fact failed to discharge that obligation. The obstruction which was in the street was not the property of the defendants but that of the street railway company. The defendants contend that, since the pole was not their property and was knocked into the street without negligence and involuntarily, they were under no obligation to remove such a nuisance from the public highway or to warn approaching travelers of the danger. This position is untenable. It appears that the defendants, in the operation of their automobile on the public street, accidentally hit a trolley pole without negligence on their part. It is assumed that they did not voluntarily hit the pole and knock it into the street. However, the operation of their automobile was their voluntary act and in the course of such operation they did cause the obstruction to be placed in the street. They cannot be said to be in the position of a bystander who is under no legal obligation to remove or guard said pole. In such a case, the mere failure to remove obstructions placed in the highway by another does not render one liable for injuries caused thereby. *Lucas v. St. Louis & S. R. Co.*, 174 Mo. 270. But when one engaged in the lawful use of the highway causes an obstruction to be placed upon it in such a manner as to be dangerous to traffic, he must use ordinary care to prevent injury to others where he knows that said obstruction is calculated to do injury to travelers upon said highway. The negligence in such a case consists of having placed an obstruction upon the street,

and leaving it in such a manner as will be dangerous to others using the street. It is unlawful, reads our statute, to "cause to be left upon any public road or street * * * any * * * broken substance whatever, liable to injure any person * * * or vehicle." Comp. St. 1929, sec. 39-1025. Under the well-established rule in this state, a violation of this statute is evidence of negligence. The defendants in this case were bound to know that travelers were passing along said street at the time and that they were liable to be injured as a result of the obstruction. One cannot obstruct the street in such a manner and say: "I obstructed the street, but I thought some one would warn of the danger." They had a positive, continuing duty to the public traveling the street to warn of this danger. The situation in such a case is not unlike that of a private contractor who opens up an excavation in the street, which is a lawful act and done without negligence, but he is required to use ordinary care in preventing injury to others. Whoever places an obstruction in a public highway, even by an involuntary act and without negligence, is under an obligation to remove such a nuisance from the highway or is required to use ordinary care to warn the traffic on said highway of the dangers incident to said obstruction.

The next question presented in this case is whether the trial court erred in overruling a motion for a new trial on the ground of newly discovered evidence. A certain witness testified in this case relative to things which happened at the scene of the accident. The newly considered evidence consists of testimony by two boys who were also present at the time and contradict certain statements made by this witness at the trial. The statements which are contradicted relate to the activity of said witness between the time the obstruction was placed in the street and the time of the collision of the plaintiff's car with said obstruction. The evidence is undisputed that, at the time of the collision, this obstruction was in the street and no one was warning approaching travelers of

the danger of said obstruction. Even the newly discovered evidence corroborates this statement. The driver of the car which had caused the obstruction in the street was not present giving any warning, and neither was any one else. We fail to see the importance of evidence as to what took place in the meantime in the trial of this case. The witness in the case testified that for a time she was "flagging" cars in the street and the affidavit of one newly discovered witness states that he "saw no woman flagging cars in the street." The affidavit of the other proposed witness states that, after the first accident in which the pole was broken, he assisted the driver of the car in pushing the car down the street and around the corner, and that he came back and "flagged" traffic for a time, but that at the time of the second accident he had discontinued such activity and had gone over on the sidewalk. He states in his affidavit that, after he returned from removing the car, he did not see the witness in the case "flagging" cars, as she testified, and is "positive that Mrs. Sprague did not flag any cars after he came back." He further states in his affidavit that, at the time the plaintiff's car hit the obstruction, there was no one out in the street. In the state of the record, which shows without dispute that the driver of the car which broke the trolley pole and knocked it upon the street busied himself with removing his car and left the scene of his accident as soon as possible, accompanied by the two newly discovered witnesses, and that at the time of the plaintiff's accident he was neither on the scene warning travelers of the danger of collision with the obstruction, nor was anyone else, it appears that the newly discovered evidence does not go to the crux of the case. A new trial will not be granted unless the newly discovered evidence is of such a nature that it would probably change the result of the trial. *McDonald v. Brown*, 90 Neb. 676; *Keiser v. Decker*, 29 Neb. 92. The most that can be said in this case for the newly discovered evidence produced by the defendants is that it might discredit the testimony of a witness for the plaintiff as to a

statement which does not affect the liability of the defendants. A new trial will not be granted on the ground of newly discovered evidence when such evidence, if produced, can have no greater effect than to discredit a party as a witness. *Kenyon v. State,* 111 Neb. 175.

The last error urged is that the verdict is excessive. Doctor Reed, the attending physician, testified that plaintiff was struck on the posterior part of the head, causing a bump with small cuts upon her face, hands and scalp; that she had pains in her back and developed a nervous condition, with the result that she was sleepless and hysterical. Doctor Dishong, who treats nerve and mental disorders exclusively, testified similarly as to her nervous condition. He found it necessary to hospitalize her for three weeks; that she was still under his care almost a year after the accident and that her chances for a complete recovery are problematical. She was unable to testify at the trial of the case. There is no evidence in the record challenging this evidence of her physical condition. If she is malingering, as delicately insinuated by defendants, it cannot be discerned from the record. She was a well, normal woman before the accident. Members of the family also testified in corroboration of her physical condition. She is unable to attend to her household duties and spends several days a week in bed. Without further delineation of testimony, which would serve no useful purpose, suffice it to say that the evidence sustains the amount of the verdict, $5,000.

Since we find no reversible error in the record, the judgment of the trial court is

AFFIRMED.