## ROSE v. BUCHANAN et ux.
### No. 10952.

Court of Civil Appeals of Texas. Galveston.

April 18, 1940.

Rehearing Denied May 16, 1940.

Wood, Morrow, Gresham & McCorquodale and Newton Gresham, all of Houston, for appellant.

J. W. Ragsdale, of Victoria, and Calvin B. Garwood, of Houston, for appellees.

CODY, Justice.

Appellees, Buchanan and wife, brought this suit to recover damages for injuries sustained by the wife in Victoria County about dusk on November 24, 1934. Appellees claimed that a loaded motor truck owned by appellant and operated by his employees broke down a bridge on November 18, 1934; which was on a public road in Victoria County, thereby creating a dangerous and hazardous condition; that appellant and his employees neglected to place any warning sign to warn the traveling public of the dangerous condition and failed to notify the proper legal authorities that the bridge had been broken; that appellees were driving their automobile along the road and crashed through the bridge,

striking the opposite side of the depression which the bridge had spanned, with resulting injuries to Mrs. Buchanan.

Appellant answered by a general demurrer and general denial.

The suit was removed to Harris County on appellant's plea of privilege and tried before a jury. Appellant introduced no evidence, but depended, in effect, upon a demurrer to the evidence. In response to special issues the jury found that the truck broke the bridge down; that this created a dangerous condition to the traveling public; that Mrs. Buchanan received her injuries as a direct result of the bridge being broken in; that appellant's employees were negligent in failing to put out any warning sign of the broken culvert and such failure was the proximate cause of the injuries, and assessed damages at $12,500.

We have concluded that the evidence failed to show, as a matter of law, that appellant violated any duty to appellees, and therefore his motion for an instructed verdict should have been granted. It is not pretended that appellant, through his employees, made other than a lawful use of the road and bridge in question. We quote the following excerpt from appellees' brief, as the presentation of appellee's position:

"It is a fallacious premise for a person to assume that he may, while doing a lawful act in a lawful manner create a condition in which another may be injured, and yet the first party be excused merely because the condition which caused the injuries was done in a lawful manner. There are many incidents * * * in which a person may be doing a lawful act in a lawful manner and yet be responsible for injuries caused as a result of said acts.

"It would be contrary to all rules of fairness to spurn with impunity the rights of others because a person is doing a lawful act in a lawful manner.

"In the present case there is in the appellees' opinion, and should be, a duty to warn future travelers or users of a public highway of a dangerous condition created through the acts of the appellant. The act of breaking was not negligence, and is not sought to be proved (negligent), but the omission of appellant in not warning future travel in some manner was negligence."

Appellees also rely on Simonsen v. Thorin, 120 Neb. 684, 234 N.W. 628, 629, 81 A.

L.R. 1000. In that case the defendants accidentally knocked a trolley pole down and did not remove it, and were held liable for injuries to subsequent travelers. The court said in part: "It appears that the defendants, in the operation of their automobile on the public street, accidentally hit a trolley pole without negligence on their part. * * * However, the operation of their automobile was their voluntary act and in the course of such operation they did cause the obstruction to be placed in the street. They cannot be said to be in the position of a bystander who is under no legal obligation to remove or guard said pole. * * * But when one engaged in the lawful use of the highway causes an obstruction to be placed upon it in such a manner as to be dangerous to traffic, he must use ordinary care to prevent injury to others where he knows that said obstruction is calculated to do injury to travelers upon said highway. The negligence in such a case consists of having placed an obstruction upon the street, and leaving it in such a manner as will be dangerous to others using the street. It is unlawful, reads our statute, to 'cause to be left upon any public road (or) street * * * any * * * broken substance whatever, liable to injure any person * * * or vehicle.' * * * The situation in such a case is not unlike that of a private contractor who opens up an excavation in the street, which is a lawful act and done without negligence, but he is required to use ordinary care in preventing injury to others." The writer of the note, following the report of the case in 81 A.L.R., at page 1004, says: "No other case has been found that goes quite so far as does the Nebraska Court in Simonsen v. Thorin * * * in holding that the owner of a truck which accidentally knocked a trolley pole into the street owed to travelers generally the duty to warn them of the obstruction thus created. * * * A statute making it unlawful to cause any broken substance to be left upon the highway is relied upon as making a violation thereof evidence of negligence."

It would seem clear that the holding of the Nebraska court is not applicable here. There the defendants not only had the right, but by statute owed the duty to remove the obstructing pole from the highway. Here we can think of no principle upon which it can be said that appellant (defendant below) had either the duty or right to repair the bridge, and it is not even

contended that defendant had either such right or duty. Lucas v. Ry. Co., 174 Mo. 270, 73 S.W. 589, 591, 61 L.R.A. 452, referred to in the Simonsen case in support of the principle that the law imposes no obligation on a mere bystander to repair a dangerous condition (and, of course, none to give warning thereof), which was recognized by the Nebraska court, holds: "all of the adjudicated cases wherein a citizen has been held liable for an obstruction or nuisance in a highway have been cases where the person held liable placed the obstruction or nuisance on the highway, or was under some duty to remove it." (Citing authorities.) If the appellant had neither the duty nor the right to repair the culvert, i. e., to remove the dangerous condition, and did not wrongfully cause the dangerous condition, on what principle can the duty be imputed to continue to give warning of such condition until it has been removed by those charged with the duty of maintaining public roads? Above all, if appellant's employees were operating the truck, at the time the bridge was broken, in a manner that fulfilled the requirements of the law, how can it be said in legal contemplation that they caused the bridge to break —in such case they were the victims of the breaking of the bridge, and are fortunate to have suffered no injuries. If appellant's employees were operating the truck on the occasion in question in a manner that fulfilled the requirements of the law, the breaking down of the culvert by such lawful operation was not the fault of appellant, and the excerpt quoted from appellees' brief above frankly recognizes this, and does not seek to base appellant's liability on the dangerous condition of the road after the culvert was broken down, but upon appellant's superior knowledge of that condition, and the alleged duty which such superior knowledge imposed to give warning of such dangerous condition, and the failure to give warning of such condition. It would scarcely be argued that those who used the road during the interval of some four to six days, between the time the culvert was broken down and the injuries of Mrs. Buchanan occurred, were under any duty to put out warnings of the condition of the road with the culvert broken down, though their knowledge of the dangerous condition was equal to that of appellant, and of appellant's employees. This is true because such subsequent users occupy the status of mere innocent bystanders in rela-

tion to the breaking down of the bridge. Now, if an innocent bystander to the breaking down of the bridge was free of the duty to post warnings of the broken condition of the bridge, notwithstanding his knowledge of such dangerous condition, how could the first victim of the breaking down of the bridge (i. e., appellant here) be under such a duty? For if the employees of appellant were operating the truck in a manner to fulfill the requirements of the law at the time of the breaking of the bridge, they were, before the law, as surely the victim of the breaking bridge as were appellees later of the broken bridge. We fail to see how an innocent victim of an occurrence can, by reason of such occurrence, owe any greater duty to the public arising out of such occurrence, than an innocent bystander in relation to such occurrence can owe. We have always understood that fulfillment of the law is a complete justification (that is, makes just or lawful).

When appellees concede that appellant's truck was operated so as to fulfill all requirements of the law when the bridge was broken, then no duty remained for appellant to discharge, and the breaking of the bridge was but the consequence of the lawful use of the road at the time the bridge was broken. We are unable to see how appellant could owe the duty to warn appellees six days later that a dangerous condition, for which he was in no wise responsible, existed.

Appellant relies upon Williams Bros. v. Brannon, 182 Ark. 361, 31 S.W.2d 403, 404. In its facts it is quite similar to the instant case. In reversing and rendering the case the court said: "There is no intimation that appellant was making any unlawful use of the highway, nor is it contended that the mere breaking of the bridge in question by the appellant and its failure to repair the same would render it liable; the contention in this case being that the conduct of the appellant after the bridge was broken in throwing the timbers and planks out to one side and leaving the ditch open created a dangerous condition, thereby by its voluntary act creating a nuisance, in that such was a wrongful obstruction and impairment of the public highway."

As appellant's employees did no voluntary act changing the structural conformation of the road, including the bridge, the case for the defendant is stronger here than in the Arkansas case.

The court should have instructed a verdict for appellant. The judgment, therefore, will be reversed and here rendered for appellant.

Reversed and rendered.

On Appellees' Motion for Rehearing.

We do not doubt that the posting of warnings of the dangerous condition of the road because the bridge was broken would have been a public spirited act. But no legal obligation rested on appellant to post, or cause to be posted, such notice because the culvert broke down when his truck was being driven over it. The admission by appellees that appellant is not liable as a wrongdoer because of the breaking down of the culvert, and that liability for damages can be sustained only on some ground other than appellant being a wrongdoer in connection with breaking down the culvert, such as failure to warn probable users of the road of its dangerous condition, establishes that. If an obligation to post warnings of the dangerous condition of the road was not imposed upon appellant because the culvert broke down while his truck was driven over it, such obligation could have been imposed on appellant only because of the knowledge which his truck-driver acquired when driving appellant's truck, and because such knowledge is imputed to appellant. In other words, to hold appellant liable for injuries resulting from his truck driver's failure to perform a public spirited and humanitarian service is pressing the doctrine of the employer's liability for his employee's action out of all bounds. And the truck drivers of all other trucks, if any, who learned of the bridge being broken before the injury occurred, were under the same obligation to perform such humanitarian service as was appellant's truck driver; and it would be strange if their failure to perform such service rendered their employers liable in damages. However, even if the appellant had been driving his truck in person, we fail to see how his failure to render such public spirited and humanitarian service could render him liable in damages. The truth is that a large sphere of human conduct must be left to the conscience of the individual. The duty which devolves upon one because he possesses special talents, large wealth, or knowledge of particular dangers that others may encounter in the way, to use his talents, wealth, or knowledge for the benefit of others can best be dealt with in the court of the individual's conscience.

206

The duty of appellant's truck driver to impart his knowledge of the hazard of the broken bridge to probable users of the road is a duty of this character, a moral duty, and for its breach his employer is not answerable in a court of law.

Motion refused.