JAMES BENES, SPECIAL ADMINISTRATOR, APPELLEE, V. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAIL-WAY COMPANY ET AL., APPELLANTS.

3 N. W. (2d) 909

FILED MAY 15, 1942. No. 31391.

*Wymer Dressler* and *Robert D. Neely,* for appellants.

*Chatt & Ellenberger, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is an action for damages by the administrator of decedent's estate. A judgment was entered immediately upon the $9,000 verdict, and defendants appeal, after putting up a supersedeas bond of $10,000.

An amended petition was filed on September 3, 1940, alleging in brief that the tracks of the defendant railway company run parallel for a short distance with U. S. Highway No. 73, which crosses the right of way and tracks a short distance north of the south line of Burt county; that on June 4, 1940, defendants were engaged in repairing and improving this crossing, and Denver LaVeck was the foreman in charge of said work, and Fred Wittig was one of said employees who was to wave a red danger flag signaling and warning passing motorists.

It is alleged that at about 12:45 p. m. on June 4, 1940, one Frank Malousek was riding north on said Highway No. 73, as a guest, and the automobile proceeded in the usual manner, at a speed of about 45 miles an hour; that when said automobile had almost reached said crossing Fred Wittig suddenly rushed up out of the ditch on the west side of said highway onto the highway in the path of the oncoming automobile, waving a red flag as a signal of danger; that as a result thereof the driver of the automobile swerved the car to the right, driving said car into a cement and steel signal post, and the deceased, Frank Malousek, was pitched from the car and thrown under the signal post.

It is further alleged that, by reason of the wrongful acts and conduct of defendants, plaintiff's intestate was severely injured, receiving a concussion of the brain and extensive fracture of the skull, together with extreme nervous and physical shock, from which injuries he died the following day. Plaintiff claims damages for mental and physical pain and suffering of said Frank Malousek in the sum of $10,000.

The amended petition further alleges that defendants were negligent in that they failed to post any warning sign or signal, or station a flagman, south of said crossing to warn oncoming traffic of construction operations, and direct

and protect oncoming traffic; that defendants were negligent in permitting said Wittig to leave his station and go to the west of said highway out of the usual range of vision of drivers of oncoming automobiles, and then, just as the automobile had nearly reached the crossing, to suddenly, wrongfully, negligently and carelessly rush upon said highway in or near the path of the oncoming automobile, waving a red signal flag in his hand, at or near the south edge of the crossing. Plaintiff alleges that said flagman should have been stationed at least 250 feet south of the railroad crossing at and immediately prior to the happening of the accident.

For a second cause of action, it is alleged that the deceased left surviving him his widow, Helen Malousek, and his father and mother, and that he was the sole support of his aged parents; that he was in good health, 34 years of age, and actively engaged in farming in Saunders county, and capable of earning $2,000 a year.

It is further alleged that it was necessary for the deceased to obtain medical attention and hospital service, and that he submitted to a cranial operation immediately prior to his death; that the medical, hospital and funeral expenses incurred amounted to the sum of approximately $750. Plaintiff claims damages on account of the wrongful death of said Frank Malousek and the hospital, medical and funeral expenses in the sum of $40,000, and prays judgment against defendants in the sum of $50,000 and costs of suit.

Defendants in their answer filed September 5, 1940, deny each and every allegation contained in the amended petition not specifically admitted, and allege that said accident was due solely to the negligence of the driver of the automobile and to the negligence of deceased; that said highway was open and clear, the visibility was ample, and that the accident was not due to any negligence of defendants.

The reply, very promptly filed on September 19, 1940, consists of a general denial and a renewal of the prayer of plaintiff's petition.

The defendant company set out 31 errors as grounds for a reversal, the principal argument being made on the charge

that the verdict was not sustained by the evidence, that there was no evidence of any damage to the widow, and the proof showed that the parents were not dependent upon the deceased son.

The widow did not appear at the trial. It seems they had been married some seven years before, and had lived together for one year only, and she had been living in Lincoln for the last six years. It is admitted that no damages to the widow were proved, and her claim is not competent, so it leaves only the parents of an adult son who are the owners of 240 acres of good farm land in Saunders county, and while it was mortgaged they were much better off in this world's goods than was the deceased son.

This is not a case where any train was involved. The automobile in which the deceased was riding was suddenly turned from the road and driven into a concrete block signal, or a support for the signal light. The deceased, by the force of the collision, was instantly pitched out of the rear window of the car against the steel signal, and a steel part of it fell over on him and caused a fracture of his skull. No one in the car could describe just how he got out of the car from the middle of the rear seat, but he went out so quickly that he could not grab hold of the side of the car or the two men with him.

The driver of the automobile testified that, as he was going north towards this crossing at about 45 miles an hour, the highway was clear; that he saw the wigwag was not in action, and although he had never been over this highway before he knew he had to cross the track, and he says that, when he was a distance of 140 feet from the crossing, this man Wittig flagged him down, and he thought there must be a train coming that he did not know about; he decided he would not go on the track, so he slid his wheels over 80 feet on the pavement, and went approximately 100 feet in all when he struck this signal block. The driver admitted he could have seen down the track back of him, but he did not look.

On the other hand, there is testimony by the defendants

that this automobile was coming at 65 miles an hour, and there was another car ahead of it, a coupé, which was coming slowly, and the flagman testified that he went over and flagged the coupé down and it stopped, and he was on the west side, and feared that this other car would run over him; he ran to the other side, and this fast-moving car "ducked" around the standing car, and then ran off the road and into this signal block. There is a sharp dispute in the evidence as to how far this flagman was south of the center of the crossing. Different witnesses testified from 10 feet to 175 feet, for one of the witnesses put this flagman south of the track near a mailbox.

Mrs. Anna Larsen, who testified for plaintiff, lived in a near-by house, shown in one of the pictures, and said the flagman was standing with a group of men around the battery box about noon, where some of the men were eating lunch. Plaintiff's evidence further shows there was a flat-top battery box some 40 feet north and west of the crossing. All the men in the automobile said he was sitting on the battery box, and suddenly jumped up from it and rushed out with this red flag and waved it violently. There is no doubt that the flagman did not intend to let any automobile go across the crossing without stopping, although the west half of the highway had not been torn up, and was all right to cross on.

The evidence shows that, when a "floating" gang of railroad repair men were going to fix this asphalt crossing, the section boss went to Tekamah to see Ward Maw, the state highway man in charge, and when inquiry was made Mr. Maw called up his superior, Mr. Easter, at Lyons, who said if the railroad company would furnish the necessary flagmen to direct traffic that would be sufficient. The section boss asked if they should also put out slow signs, and Mr. Easter said it would not be necessary if they had the flagmen.

This procedure is in accordance with section 39-1117, Comp. St. 1929, in which power is conferred upon the department of public works to devise and supervise the erec-

tion of stop signs, red flares, or warning signs, and to erect and maintain such of them at railroad crossings where the same intersect highways, where, in the judgment of the department of public works, it is deemed advisable.

The defendant company, engaged in repairing the crossing, which required temporary obstruction of part of said highway, is required to use ordinary care to prevent injury to others, and in the exercise of that ordinary care sought and followed the instructions given its employees by the officer of the state highway department in charge thereof. See *Simonsen v. Thorin*, 120 Neb. 684, 234 N. W. 628.

In the case at bar, while it is ordinarily the duty of the guest to exercise due care for his own safety, and to warn the driver of danger, yet the evidence and circumstances of the instant case are not such that the guest was in a position to anticipate danger sufficient to require the guest to warn the driver. See *Gleason v. Baack*, 137 Neb. 272, 289 N. W. 349; *Fischer v. Megan*, 138 Neb. 420, 293 N. W. 287; *Hendren v. Hill*, 131 Neb. 163, 267 N. W. 340.

There is considerable discussion in the briefs about the recovery by the wife or parents, but under our view of the case this phase need not be discussed.

We now come to the question of the negligent act committed by the defendants. The railroad company decided that it would rebuild this crossing, and had brought in an extra gang of employees, who were digging out one side of the highway, and who had gone to dinner when the accident happened. The state highway engineer had said that, if the company put out a flagman, that would be sufficient, and it need not put any slow sign, but the section foreman thought he would do better than he was required, and he put out two flagmen to flag down the traffic, one on each side of the track, and then would have the traffic proceed across slowly. The section boss was not given any directions as to how far away or where the flagman should stand.

The driver of the automobile could see he was approaching a railroad, and if one side of the highway was torn up he should have reduced his speed very materially. Now, the

negligence charged is that the flagman rushed in front of him and waved a red flag violently, and that this was the proximate cause of the accident.

When the flagman had done his duty, the driver of the car decided that maybe a train was coming from the rear which he had not seen, but admitted that he could have seen down the track if he had looked back. In carrying out his decision not to cross the track, he turned and ran down the side of the track, struck the electric signal, and his guest was killed. Was this not because of the driver's own dereliction in not looking back to see whether a train was approaching or not? If so, then the proximate cause of the accident might be said to be the negligence of the driver.

At the close of all the evidence, the defendants made this motion: "Mr. Dressler: Come now the defendants at the close of all the testimony and move the Court either to direct the jury to return a verdict for the defendants or to discharge the jury and dismiss the case at plaintiff's costs, for the following reasons:

"1. The evidence is wholly insufficient to sustain any verdict against any of the defendants.

"2. The evidence shows without dispute that the sole and proximate cause of the accident was the act of the driver, in becoming confused and misinterpreting the meaning of the flag signal which he received when the motor vehicle was one hundred and forty feet from the crossing, and which the overwhelming evidence shows was substantially further than that; and the evidence shows that he did not even see the crossing was out of repair, but says that he thought a train must be coming which he had not seen and had not looked by his own admission to the south for a train. Under these circumstances the condition of the crossing, or whether it was a flagman, or where he may have been stationed, was not the proximate cause of the accident, but the sole and proximate cause is the negligence and confusion of the driver, misinterpreting the signal of the flagman."

It is the opinion of the court that, under the evidence and the law, this motion should have been sustained by the court.

The verdict and judgment are hereby set aside, and the action dismissed.

REVERSED AND DISMISSED.