FRITZ SCHWEPPE, APPELLEE, V. HENRY UHL ET AL., APPELLANTS.

FILED DECEMBER 4, 1914. No. 17,897.

1. **Torts:** JOINT AND SEVERAL LIABILITY. An act wrongfully done by the joint agency or co-operation of several persons, or done contemporaneously by them without concert, renders them liable jointly and severally.

2. **Highways:** OPERATION OF AUTOMOBILES: CONCURRENT NEGLIGENCE. Evidence examined, and set out in the opinion, *held* sufficient to establish concurrent negligence on the part of the defendants, which rendered them jointly and severally liable therefor.

APPEAL from the district court for Otoe county: RALPH W. HOBART, JUDGE. *Affirmed.*

*Livingston & Heinke,* for appellants.

*H. G. Wellensiek* and *Paul Jessen, contra.*

FAWCETT, J.

From a verdict and judgment of the district court for Otoe county, awarding plaintiff $261.50 damages for the negligent and careless operation of automobiles owned by defendants, defendants severally appeal.

The petition alleges, in substance, that on August 18, 1911, plaintiff was traveling along a public highway driving a team of horses attached to a wagon; that while so traveling, and at a narrow place in the road, the defendants approached him from the rear, each driving an automobile; that as they approached they carelessly and negligently sounded horns and made unusual and unnecessary noises with their automobiles and other instruments; that they were each traveling at an excessive rate of speed, to wit, 15 miles an hour; that as they approached from the rear, making the noises and confusion noted, and at the rate of speed stated, plaintiff's team became frightened, and he requested defendants to cease said noise and reduce their speed until he could get his horses under control and reach a point of safety; that defendants each disregarded his request and ran their automobiles by his team in a careless and negligent manner, at a place where the same was approaching a bridge and where the road was too narrow to allow plaintiff to turn out; that each of defendants in passing turned into the road immediately in front of plaintiff's team and less than 30 feet therefrom; that, by reason of the careless and negligent acts of defendants, plaintiff's team became frightened and unmanageable and ran away, throwing plaintiff out and permanently disabling his right arm; that in all of such acts defendants were acting in concert and their automobiles formed a part of one procession. Defendants answered separately, by general denial.

The grounds upon which defendants assail the judgment are: (1) That the evidence shows there was no concert

of action in the acts of negligence alleged to have been committed, nor any concurrent negligence at the different intervals of time when the several automobiles passed plaintiff; that, regardless of the acts of negligence by the defendants who owned the first five cars that passed, plaintiff suffered no injury or damage resulting therefrom; (2) that defendants were lawfully upon the road; that there was no concert of action or common purpose or understanding to injure plaintiff, or to do the negligent acts complained of, shown; that no one of defendants had authority over the others to direct their movements; that if negligent acts were committed, as alleged, they were several and individual, and not joint; (3) that a joint tort is necessary to the maintenance of a joint action; and (4) that the court, on the questions of law reserved at the time the verdict was received, should have entered judgment for the defendants. It will be seen from this statement that the sole question to be determined is: Are the defendants jointly liable for their wrongful acts, which the evidence clearly shows caused plaintiff's injury?

The evidence shows that on the day in question the defendants, with a number of other persons, in 16 automobiles, formed a procession at the town of Talmage, and proceeded from there, in procession, to several adjoining towns. The purpose of this tour was to advertise the town of Talmage, and especially a picnic which was to be held at that place within a few days thereafter. The trip was prearranged, the details thereof provided for, and defendants, with the other persons who accompanied them, participated in all the matters in relation thereto. They formed a procession and proceeded as such during the entire trip after leaving Talmage until after the occurrence upon which this action is based. The several cars which comprised the procession moved in the same direction, at the same time, at substantially the same rate of speed, for the same purpose, and with the same end in view. The car of defendant Uhl headed the procession. Second came the car of Henry Bischof, who was made a defendant in the action, but in whose favor a verdict was di-

rected, so that he is no longer in the case. Then came the cars of defendants Gritzka, Kuse, Young, Kohrs, and Ritter, in the order named. When the procession left the town of Syracuse, it proceeded south toward the next town on its schedule, as previously arranged and agreed upon. The procession in the order named overtook, the first six cars passed, and the seventh attempted to pass, plaintiff at a point near to a bridge across the Nemaha river. It is clearly established that the procession moved with unusual noise, and that nothing was done by the defendants, or any of them, to avoid danger from frightening plaintiff's team as they passed him. Plaintiff testified that, when the first car came up to him, "they said give them some more road; there is 16 more coming. And I said, 'You better stay back and let me cross the bridge, and then I will give you more room.' It was plowed around, and there was no chance at all so I could get out of the way." He further testified that they did not "stay back," but went on by; that as the first car went by it turned back into the road so abruptly that he had to jerk the team quickly to the right or it would have been struck by the car; that when this happened his horses "looked up and got kind of scared. They didn't run. I got control of the horses that time." When asked how far ahead of him they turned back into the road, he answered that the first one turned "just as close as he could, and the rest of them did that, too." He fixed the distance ahead of his team at which the first car turned back into the road at less than five feet, and the rest at less than ten feet. After testifying as to the first car, he was interrogated about the others, and answered: "Well, I know about four cars; that is what I know that passed. I held my horses all right then, because they were getting scared from the first time on; but I held them all right. And then, after that, they got scared so much they started at a gallop; and just as soon as they started out they made more noise, the automobiles did, than they did before." He further testified that, after the horses started to run, he knew of at least one car that passed him; "and then, after that, that

one car came behind, and the team run just as fast as the car then, and I didn't have any control of the team, and I couldn't hold them at all, and they run to the Nemaha bridge. And when the wagon struck the bridge it broke the axle on the wagon—it was a new wagon—and broke the coupling pole, and the team run off with the front part of the wagon, and the box tipped over nearly on top of that bridge and upside down, and I laid under it. I was all under the wagon bed except my arm, and I had the wagon bed on my elbow on the bridge. Q. Now, at the time that your team was running, as you have told the jury, you may state whether or not there was any car on the side of you racing with you on this road? A. Well, a short time there was a car with me, together, and the team and the car one of them runs just as hard as the other. The team got ahead and the car stayed behind. * * * Q. While you were racing along with this car, what noises, if any, did you hear back of you? A. Well, I don't know what it was besides the horns, but they made some noise besides the horns they had on the cars. Q. Were they making lots of noise? A. Yes." He then testified as to the good disposition of his horses. He further shows that there was a ditch on his side of the road, so that he could not turn out farther than he did. He then shows that he had ridden in automobiles and watched the speedometers, and that in his judgment the cars that passed him were running from 20 to 25 miles an hour.

Herman C. Gruenther, a young man 20 years of age, was called as a witness. His testimony shows that he was traveling along this road with a motorcycle; that he had some trouble with this motorcycle, and had stopped for the purpose of putting it in order; that while he was there plaintiff passed, driving his team; that within five minutes thereafter "the Talmage boosters" came along; that when they passed him they were making a noise with rattles, horns and whistles; "they. made all kinds of noise;" that they were blowing horns with their mouths, in addition to blowing their automobile horns; that their mufflers were off, and they were making so much noise as they passed

Schweppe v. Uhl.

he could not hear the noise of his own motor; that they were running "25 to 30 miles an hour anyway;". that after they had passed he heard a different noise, "or a scream of some kind;" that he looked up and saw the team and wagon were having trouble, with the cars racing side by side; that they were not very far from the big bridge; that he watched the team until it reached the bridge; that when the team struck the bridge the man was thrown out, and then the cars stopped.

It is needless to quote any more of the testimony. It is very clear that the defendants, not only carelessly, but recklessly, passed the plaintiff when he was in a place of danger, at a high and reckless rate of speed. According to the plaintiff, instead of stopping the noise, they made more as they drove by. The evidence shows that plaintiff's horses were not easily frightened. It is clear that, even with the noise the cars were making, no one of them, passing as they did, would have caused the runaway; but, rushing by as they did, one after another, in rapid succession, proved to be too great a strain for even this reliable team. The horses "looked up and got kind of scared" as the first car whizzed by. They became more and more frightened as each succeeding car passed, until the strain became more than they could bear, and when the seventh car attempted to pass their fright reached a point where plaintiff was unable to longer control them. This result was, therefore, not caused by the single act of any one of the defendants, but by the combined acts of all. Their actions show a disregard for the rights, and even the life, of the plaintiff, for which the jury held they should answer, and they should consider themselves very fortunate that the jury dealt with them as leniently as the verdict shows.

The contention that no concurrent negligence on the part of the defendant is shown is without merit. If the cars were running at the rate of speed testified to by plaintiff and the witness Gruenther, and they were traveling about 25 yards apart, as shown by the evidence, less than half a minute's time would elapse between the passing of

the first and the seventh car, and not more than three or four seconds between each car and the one following. The driver of each car as he approached could see the dangerous situation of plaintiff. None of them tried to lessen his danger, but all proceeded in the same manner and with the same unusual noises. This is not a case where several different cars were each running independently of the other and without any concert of action or agreement as · to the manner of their running. It was one single procession, made up of the several cars as units of that procession. It was running as a procession by agreement, the speed of each car being regulated by the speed of the leader. If ever a case of concurrent negligence could be made out, it seems to us that it has been done here. The law in such a case is plain. As said by Judge Cooley in the third edition of his work on torts (1 Cooley, Torts (3d ed.) p. 247) : "The weight of authority will, we think, support the more general proposition that, where the negligences of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert action." The rule announced by Judge Cooley is cited with approval in *Walton, Witten & Graham v. Miller,* 109 Va. 210. The same doctrine is also held in *Cleveland, C., C. & St. L. R. Co. v. Hilligoss,* 171 Ind. 417; *Cuddy v. Horn,* 46 Mich. 596; *Flaherty v. Minneapolis & St. L. R. Co.,* 39 Minn. 328, and *Corey v. Havener,* 182 Mass. 250. In the last case cited, two defendants, each mounted on a motor tricycle, with a gasoline engine making a loud noise, came up behind the plaintiff, who was driving slowly in a wagon, and passed him at a high rate of speed, one on each side, causing his horse to shy so that his wagon wheels struck another wagon, and plaintiff and his wagon were injured. He brought a separate action against each defendant and obtained a verdict against each: "Held, that, both of the defendants having been found to be wrongdoers, it made no difference that there was no concert between them, or that it was impossible to determine what portion of the injury was caused by each, that if each con-

tributed to the injury both were bound, and that whether each contributed was a question for the jury." In the opinion, on p. 252, the court say: "It makes no difference that the defendants were sued severally and not jointly. If two or more wrongdoers contribute to the injury, they may be sued either jointly or severally."

At the time of the trial the defendants severally moved the court to reserve "questions of law involved in this case for decision as affecting the judgment proper to be entered." The court did as requested, and answered the questions adversely to defendants. In this the court was fully sustained by the evidence and the law applicable thereto.

AFFIRMED.

REESE, C. J., SEDGWICK and HAMER, JJ., not sitting.