JOHN BOSTEDER, APPELLANT, V. WILLIAM B. DULING ET AL., APPELLEES.

FILED APRIL 26, 1927.   No. 24858.

1. **Pleading:** GENERAL DENIAL. A general denial in an answer may be qualified and supplanted by that which precedes as well as that which follows it.
2. **Record** examined, and *held* that the judgment of the trial court as rendered is erroneous and clearly against the weight of the evidence and the law applicable thereto.
3. **Witnesses:** ADMISSION OF CONVICTION OF FELONY. Under section 8848, Comp. St. 1922, where a witness on cross-examination admits previous conviction of a felony, it is error to allow further inquiry on the subject or to permit the record of the conviction to be introduced.
4. ———: PRIVILEGED COMMUNICATIONS. "Under section 7894, Rev. St. 1913 (now section 8836, Comp. St. 1922), a person is not incompetent to testify in respect of independent acts performed by him, for or in behalf of a person since deceased, when it appears that he had no conversation with the person since deceased with respect to such acts, and in which the deceased did not participate." *Larson v. Swingley,* 105 Neb. 116.
5. **Criminal Law:** ATTAINDER. Corruption of blood or forfeiture of estate, as imposed by the common law on persons attainted of felony, are unknown to the laws of this state, and no conse-

quences follow conviction and sentence by reason thereof save and except such as are declared by Constitution or statute.

6. **Torts:** JOINT AND SEVERAL. "An act wrongfully done by the joint agency or cooperation of several persons, or done contemporaneously by them without concert, renders them liable jointly and severally." *Schweppe v. Uhl,* 97 Neb. 328.

APPEAL from the district court for Lancaster county: JEFFERSON H. BROADY, JUDGE. *Reversed.*

*Allen & Requartte* and *E. G. Maggi,* for appellant.

*Reavis & Beghtol* and *Adams & Zimmerman, contra.*

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

THOMPSON, J.

This case is one in which the plaintiff, appellant, seeks to recover damages for an injury caused by the wrongful acts and neglect of the defendants, appellees. At the close of the plaintiff's testimony the defendants respectively moved the court to dismiss the action for the following reasons: "(1) Because the record shows that the plaintiff has been convicted of a felony, has lost his civil rights, and has no right to maintain an action in the courts of Nebraska; (2) because the evidence is not sufficient to sustain a verdict in favor of the plaintiff and against this defendant; (3) because the plaintiff has not sustained any of the allegations of his petition against this defendant." These motions were sustained and judgment of dismissal entered. Plaintiff appeals.

The plaintiff's petition is in usual form in such cases, and in substance charges the defendants with being joint owners of an ensilage cutting machine, operated and used by them as neighboring farmers in Lancaster county; that the machine was worn, out of repair, unfit for use, and dangerous, especially as to the one feeding the same, and so known to be by defendants, but not by the plaintiff, as defendants well knew; that notwithstanding such defects defendants directed the plaintiff as their employee and servant to feed

corn stalks into such machine, which he did, and while so doing received the injury complained of; that defendants thus failed and neglected to furnish plaintiff with a reasonably safe place to work and reasonably safe appliances with which to do the work, which neglect was the proximate cause of the injury, and the resulting damages complained of; all without fault or negligence on the part of the plaintiff.

Separate answers were filed by Duling and Barrett, each, however, identical in terms. Thereafter the defendant Barrett died, and before trial the case as to him was revived in the name of appellee Mary Barrett, administratrix of his estate. However, new pleadings were not filed. One of such answers, omitting the formal parts, will be here extended in substance: (1) Admits that the defendant is engaged in the business of farming in Lancaster county, and is one of the owners of an ensilage cutting machine; (2) that, at the date mentioned in plaintiff's petition, plaintiff injured his hand while operating such machine;. (3) a general denial; (4) that the injury to plaintiff was not caused by any carelessness or negligence on the part of defendant, but was occasioned solely by the gross negligence and carelessness of plaintiff; (5) that the risks and dangers of operating the machine were open, obvious, and known to plaintiff, and that he assumed such risks and dangers by reason of his entering and continuing in such employment..

The reply denied specifically, as well as generally, that plaintiff's injury was caused by his own negligence, either gross or otherwise, and also denied that the risks of operating such machine were open and obvious, or known to him, or that he assumed the risks connected therewith.

It will be seen that the first paragraph of the answer admits that the defendants were engaged in the business of farming, and were the owners of such ensilage cutting machine. The second paragraph admits that on the day in question the plaintiff injured his left hand while operating such machine. The fourth paragraph admits the injury. Without going into a discussion of the actual legal scope

of the fifth paragraph, it can safely be said that it admits that the operation of such machine presented risks and dangers; that the plaintiff was employed in the operation of the machine, and while so engaged he received the injury complained of. As to the third paragraph of the answer, such general denial is qualified and supplanted by that which precedes as well as that which follows it. *Carson v. Hunt,* 113 Neb. 727. Thus, the denial would be effective only as to the facts contained in the petition which were not admitted by the answer.

In addition to the facts admitted in the answer, the record reflects the following: Defendant Duling, at the instance of Barrett, then co-owner of the machine in question, went to the plaintiff and told him in substance that Barrett was preparing to ensilage his corn stalks with such machine, and thereafter store it in his silo on his farm, as to which conversation plaintiff testified: "Mr. Duling said Mr. Barrett had called him up and they wanted to fill the silo and they wanted I should feed the machine. * * * He (Duling) said they would have to wire it to hold it in gear, and I told him I wouldn't feed it that way because, if anything happened, you couldn't get it out of gear." As to a conversation with Duling a few days later, plaintiff testified: "He (Duling) said that he had saw Mr. Barrett, and Mr. Barrett told him he had the machine repaired and it was in good shape and ready to go as soon as they got there with the engine to furnish the power, and when they did I should go over and feed the machine." Further, on the day of the accident, in a conversation with Duling plaintiff testified: "He (Duling) was coming to Lincoln that day, and he said if Mr. Barrett called up while he was gone and was ready that I should go over there and feed the machine;" that plaintiff, relying upon the fact that the machine had been repaired, went to the Barrett farm in response to a telephone call from Barrett, and on his arrival there the machine in question was in operation, and was being fed by Barrett; that Barrett stepped aside, and plaintiff entered

upon his duties and commenced to feed the machine, and Barrett left the machine and went into the silo and never returned until after the injury to plaintiff's hand and arm had taken place. This employment on the part of Barrett and the authority given to Duling by Barrett is also strengthened by the testimony of R. O. Dillman, who testified to a conversation he had with Barrett on the day of the accident, and just prior thereto, as follows: "I said, 'Mr. Barrett,' I said, 'Who is going to do the feeding?' He says, 'Mr. Duling is sending his man to do the feeding; he fed it last year'." That the machine had not been repaired is evidenced by the testimony of this same witness, that immediately after the accident and the release of plaintiff from the machine he (Dillman) fed the machine, and, "The first thing I did was to try the safety. It worked, but nothing extra. She would jump and grab and she wouldn't release fully. * * * It would stop a minute and then the gears would make several revolutions and let loose again.* * * It wouldn't stay out of gear only just a second or two. * * * Catch and start in motion again." Futher, on direct examination, the testimony of the witness R. O. Dillman, in part, is as follows: "Q. Just what was his (plaintiff's) position and condition when you first heard him hollering and looked at him? A. The minute I seen him when he hollered this hand was straight through the rollers. He had this hand on the safety lever. Q. Was that safety lever near there? A. Yes, sir; where he could reach it with his right hand. Q. What was he doing with his hand on the safety? A. Trying to throw the safety and stop the rollers. Q. Was he able to do that? A. No, sir. Q. What did you do? A. I come over the table from the wagon and pulled on the safety and couldn't make it go. Q. You were not able to release it? A. No, sir." And, on cross-examination: "Q. When was it you saw him reach around and reach for the lever? A. His hand was on the lever when I got there. Q. When you got there he had his right hand on the lever; did he? A. Yes, sir. Q. And his left hand in the roller? A. Yes, sir."

Thus, the facts alleged in the plaintiff's petition find support, not only by way of admissions contained in the answer, but also by the uncontradicted evidence introduced at the trial; there being no evidence introduced on the part of the defendants.

As to the law applicable to such a state of facts, see, *Poos v. Krug Brewing Co.*, 101 Neb. 491, and *Carnahan v. Chicago, B. & Q. R. Co.*, 102 Neb. 76.

Hence, in any view taken, we are impelled to conclude that the judgment of the trial court, as rendered, is erroneous, is clearly against the weight of the evidence and the law applicable thereto, and should be reversed.

Nevertheless, as a new trial must be had, it may be helpful to pass upon the other errors presented. On the cross-examination of plaintiff he was asked by defendant's counsel if he had not been convicted of a felony. To which he answered, "Yes, sir." Over objections of plaintiff properly lodged, the defendant was permitted to continue this inquiry to some length, and then procured to be identified by the reporter a complete record of such criminal trial and conviction, which was then offered, and, over objections, received in evidence, and, as evidenced by the motions to dismiss and the ruling thereon, was considered in the further disposition of the case. The action of the trial court in allowing further inquiry on the subject of the felony conviction, after plaintiff had admitted that he had been convicted of a felony, was reversible error, as was also the receiving in evidence of the record of such felony conviction, as held by us in *Vanderpool v. State, ante*, p. 94:

"Under section 8848, Comp. St. 1922, providing that a witness may be interrogated as to his previous conviction for a felony, but that no other proof is competent except the record thereof, a defendant in a criminal prosecution becoming a witness in his own behalf may be asked on cross-examination whether he has previously been convicted of a felony, and if he answers in the affirmative further examination along that line should cease. If he answers in the

Bosteder v. Duling.

negative, he may be impeached only by the record of his conviction." And further: "When a defendant in a criminal prosecution becomes a witness in his own behalf and on cross-examination, in response to any inquiry by the county attorney made under the provisions of section 8848, Comp. St. 1922, admits that he has previously been convicted of a felony, it is error for the court to permit the county attorney, over objections, to inquire as to the character of the offense or to permit the record of the conviction to be introduced."

If such is the law in a criminal case, we know of no reason why a different rule should be applied in a civil action.

It is further contended by the appellant that error was committed by the trial court in its refusal to permit the plaintiff to testify as to the condition of the machine at the time of the accident, and what he did at that time. The evidence, as before indicated, conclusively shows that at the time covered by the above questions Barrett was inside the silo, and was not present where he could see or know any of the conditions that existed at the time of the accident. As we held in *Larson v. Swingley,* 105 Neb. 116: "Under section 7894, Rev. St. 1913 (now section 8836, Comp. St. 1922), a person is not incompetent to testify in respect of independent acts performed by him, for or in behalf of a person since deceased, when it appears that he had no conversation with the person since deceased with respect to such acts, and in which the deceased did not participate." While the witness may testify as to facts and circumstances which are independent acts performed by him, and as to which the deceased did not personally participate, nevertheless "he must furnish other and competent evidence connecting those acts with the subject of his demand, or his evidence will be stricken from the case," as we held in *Fitch v. Martin,* 83 Neb. 124. Therefore, we conclude that such testimony was admissible, and it was error to exclude it. This conclusion will answer as well for other similar objections to this line of questioning which were interposed by defendant and sustained.

Further, it must have been considered by the trial court, as evidenced by his ruling in permitting the record and judgment of the criminal trial to be introduced in evidence, as well as in sustaining the motions to dismiss, that, by reason of the plaintiff's having been convicted of a felony, he was deprived thereby and by reason thereof of his civil rights, and therefore was without authority to prosecute this action. In support of this holding of the court, section 2, art. XV of the Constitution, and sections 1894, 9933, and 10262, Comp. St. 1922, are cited. It will be seen that section 2, art. XV of the Constitution, simply deprives the convicted person of the right to hold office. By section 1894, he is deprived of his right to vote. Section 9933 renders him incompetent to serve as an elector or juror, or to hold any office of honor, trust or profit within this state, unless pardoned. Under section 10262, rights denied him by statute are restored when he is discharged through the board of pardons.

Considering the above constitutional provision and such sections of the statute, together with section 15, art. I of the Constitution, which provides that "no conviction shall work corruption of blood or forfeiture of estate," none thereof deprives such convicted person of other or different rights than those specifically named therein respectively. Thus, "corruption of blood" and "forfeiture of estate," as imposed by the common law on persons attainted of felony, are unknown to the laws of this state, and no consequences follow conviction and sentence by reason thereof, save and except such as are declared by Constitution or statute. As well said in 13 C. J. 914, sec. 6: "In accordance with the modern policy of a more humane administration of the criminal law, the early doctrines of the common law in regard to the attainder, forfeiture, and corruption of blood of convicts have been either entirely swept away or modified by constitutional and statutory provisions."

As no conviction shall work "corruption of blood or forfeiture of estate," certainly none of such sections cited de-

prives this plaintiff, by reason of his conviction of a felony, of his civil right to his property and earnings, as existed prior to such conviction, and neither do they deny to him due process in our courts to protect his property or earnings. Civil death, as known to the common law, is without place in our jurisprudence.

The further question is presented that these defendants are not jointly liable, and, not being so, cannot under this record be held individually. The evidence presented brings this case clearly within our holding in *Schweppe v. Uhl*, 97 Neb. 328, wherein we held: "An act wrongfully done by the joint agency or cooperation of several persons, or done contemporaneously by them without concert, renders them liable jointly and severally." Further, as held by us in *Koehn v. City of Hastings*, 114 Neb. 106: "If one suffers injury and damage as the proximate result of the negligence of two others, and the damage would not iave occurred but for the negligence of each of such parties, both are liable to the person so injured."

The judgment of the trial court is reversed and the cause remanded for further proceedings.

REVERSED.