LAURA ELEANOR HAYNES, ADMINISTRATRIX, APPELLANT, V. NORFOLK BRIDGE & CONSTRUCTION COMPANY ET AL., APPELLEES.

FILED MARCH 2, 1934. No. 28776.

*George I. Craven* and *Williams & Williams*, for appellant.

*Deutsch & Stevens*, contra.

Heard before GOOD, EBERLY and DAY, JJ., and BLACK-LEDGE and RYAN, District Judges.

GOOD, J.

Laura Eleanor Haynes, as administratrix of the estate of her deceased husband, Thomas Haynes, brought this action on behalf of herself and minor children, to recover damages because of the death of her husband, which she alleges was caused by the wrongful and negligent acts of the Norfolk Bridge & Construction Company. At the conclusion of all the evidence, the trial court, on motion of defendant, directed a verdict in its favor. Plaintiff has appealed.

We are required to determine from the record whether there was sufficient evidence to require submission of the cause to the jury.

In November, 1929, the Norfolk Bridge & Construction Company (hereinafter referred to as the Norfolk Company) entered into a contract with the state of Nebraska, whereby it was to construct and install all culverts required on a highway extending from the city of Albion eight miles south. The project was designated and known as 619-A. The Norfolk Company began constructing the culverts at the south end of project 619-A and worked north. The last work being done was the laying or installing of twin concrete culverts a short distance south of the city of Albion. These twin culverts were each 36 inches in diameter, and the roadway was excavated to the depth of about 1½ feet. The concrete culverts were 36 feet and 40 feet long, respectively, and were laid parallel to each other. The Norfolk Company, after the excavation and placing of these culverts in position, threw the dirt that had been excavated so as to make an approach to and cover the center part of the culverts. The evidence shows that the last work done upon this project 619-A by the Norfolk Company was on the 18th day of July, 1930; that at that time the state's project engineer and the foreman of the Norfolk Company together estimated and agreed upon the yardage, and the engineer entered in his book, kept for the purpose, that the work was finished or completed. A day or two thereafter the Norfolk Company removed all of its equipment and entered upon the work of construction on project 620-A, several miles distant from the scene of the twin culverts, and upon an entirely different contract. The record discloses that there was also a second contract between the state and another contractor, the latter to do the work of grading and surfacing on project 619-A after the culverts were installed. The record shows that this contractor entered upon its work of grading and surfacing the road on the 15th day of July, 1930.

About midnight of July 29, 1930, Thomas Haynes and a companion were driving north over this road, and, in attempting to pass another car in front, ran into the west end of the twin culverts which was not yet covered with dirt. Haynes' car was overturned, and he sustained injuries from which he died on the 10th of August, 1930.

It is plaintiff's contention that the work done by the Norfolk Company had not been accepted by the state; that it was yet in control of that part of the road where the twin culverts had been installed, and that the Norfolk Company had failed to erect barriers or put up warnings or danger signals to advise plaintiff's husband and others traveling upon the highway that it was under construction and dangerous for travel.

The record shows that the project, or resident, engineer, in the course of his work, makes his reports to the district engineer, who, in turn, makes his reports to the department of public works at the state capitol, and that the district engineer did not send any recommendation of formal acceptance of the work on project 619-A to the department of public works until the 6th day of August, 1930. Plaintiff insists that until this acceptance was made the contractor was in charge of the highway and under duty of maintaining barricades, warning signs, and red lights, as provided by the contract between the state and the Norfolk Company.

During the trial plaintiff introduced in evidence a part of a single sentence from the 15th paragraph of defendant's answer, and contends that this amounts to an admission that the work of defendant on the twin culverts had not been accepted by the state until August 6, 1930, or nine days after the accident. Standing alone, the sentence may lend color to the plaintiff's contention, but, if taken in connection with the other allegations of the paragraph, it fails, in our opinion, to have the probative force asserted by plaintiff.

The following is the portion of the paragraph that is material to this consideration, the italicized words being

the part introduced in evidence by plaintiff: "On the 18th day of July, 1930, this answering defendant completed the construction of such work on such section and the engineer in charge thereupon inspected the same and calculated the excavation and yardage in company with the superintendent of this answering defendant and each agreed upon the completion of the construction of such culverts according to the specifications and contract and further agreed upon the yardage reflected in the excavation necessary for the installation and construction of such culverts, and the said engineer in charge then noted the said work in writing in the presence of the said superintendent as completed and finished and then expressly informed the said superintendent to not move any additional dirt thereon and advised and informed him that arrangements had been made with a county commissioner of Boone county to move dirt at any culvert or bridge construction upon said project because of the high contract price for grading provided in the contract with this answering defendant, and then tentatively accepted such construction in writing, and accepted the maintenance thereof on behalf of the state, and authorized this answering defendant to remove from said project to the said project 620-A and that subsequently, *on the 6th day of August, 1930, the said engineer and his superiors made their final estimates and recommendation for final acceptance to the office of the said department of public works at Lincoln, Nebraska, and the said construction upon said project 619-A and especially the said twin culvert construction was formally and finally accepted by the said department of public works in the course of the routine thereof* and that this answering defendant, subsequent to the 18th day of July, 1930, was not prosecuting any construction upon said project 619-A but had fully and completely performed its contract aforesaid and was not in possession or upon any of said project 619-A but had completed the same according to specification and delivered the same to the said state of Nebraska and the said

state of Nebraska was in possession thereof as proprietor at the time of the accident aforesaid."

Taking the paragraph as a whole, it seems clear that there is nothing that amounts to an admission that the work had not been completed and accepted by the state, unless it is contended that, by acceptance, is meant formal acceptance. However, plaintiff admits in her brief and on oral argument that formal acceptance is not essential.

The contract between the state and the Norfolk Company makes provision for tentative acceptance and relieving the contractor of liability for accidents occurring upon the highway. Section 7.13 provides:

"Opening of Section of Highway to Traffic.

"At the option of the engineer certain sections of the work may be opened to traffic. In such case the section will be inspected, completed work tentatively accepted in writing at the discretion of the engineer, and the same turned over to the state for maintenance. Such action shall not in any way be construed as a final acceptance of the road.

"Upon written authorization by the engineer the contractor may cease to maintain barriers and red lights; the road may be opened to traffic; the contractor is relieved from further maintenance of barriers and lights on that portion of the road; and the contractor is relieved from further public liability on that portion of the road.

"The contractor will not be held responsible for damages to portions of the road which have been approved by the engineer and opened to traffic prior to final approval and acceptance of the road, provided such damages are due to actions of the elements or to the ordinary action of traffic. The contractor is responsible for any damages which may have been occasioned by defective work or because of noncompliance with the plans, specifications and contract."

There is no evidence in the record that there were any defects in the work performed by the Norfolk Company,

or that it failed in any respect to comply with the plans and specifications of the contract.

It is a general rule that the acceptance that is required by the proprietor of the work of a contractor, in order to relieve the contractor of liability for injuries to third persons after the acceptance, is a practical acceptance after the completion of the work, a formal acceptance not being required. This rule is supported in *McCrorey v. Thomas*, 109 Va. 373; *Rengstorf v. Winston Bros. Co.*, 167 Minn. 290; *First Presbyterian Congregation v. Smith*, 163 Pa. St. 561; *Memphis Asphalt & Paving Co. v. Fleming*, 96 Ark. 442; *Read v. East Providence Fire District*, 20 R. I. 574; *Armstrong v. City of Tulsa*, 102 Okla. 49; and numerous other cases. The rule is also substantially stated in 45 C. J. 884, and in 20 R. C. L. 53, sec. 49. In the *Rengstorf* case the facts were very similar to those involved in the instant case. The contract was quite similar to the one involved in this action. The injury occurred after completion of the work and before final formal acceptance. It was there held that the contractor was not liable. In many of the cases the acceptance that will relieve the contractor is designated as actual, factual, practical, or tentative, as distinguished from final and formal acceptance.

In the instant case it appears beyond dispute that defendant had completed its work and did no work on the culverts after the 18th day of July; that there was no other work for the contractor to do after that date; that on that day the contractor removed its equipment to another locality under the direction of the state's engineer. It is undisputed that the work was inspected by the state's engineer in company with the defendant's superintendent; that the engineer designated the work of the culverts as 100 per cent. complete and entered on his book a record that defendant's work was finished. We think, beyond question, this amounted to a tentative and actual acceptance and relieved the contractor from any further duty to maintain lights, guards or other warning

signals after that date. The burden was upon the plaintiff to establish that the contractor was yet in charge and control of the work at the time of the accident. In this she has utterly failed. There is no evidence that would warrant submitting this question to the jury. Trial court should direct verdict for defendant where evidence is insufficient to sustain a verdict against him.

There are other assignments of error and a cross-appeal by defendant, but the conclusion reached renders it unnecessary to consider either the cross-appeal or the other assignments of error.

The judgment is right and is

AFFIRMED.