PATRICIA SHUPE, A MINOR, BY BELVIN SHUPE, HER NEXT FRIEND AND NATURAL GUARDIAN, APPELLEE, V. COUNTY OF ANTELOPE, A MUNICIPAL CORPORATION, ET AL., APPELLEES, IMPLEADED WITH PENWELL & DECKERT CONSTRUCTION COMPANY, A COPARTNERSHIP, ET AL., APPELLANTS.

59 N. W. 2d 710

Filed July 10, 1953. No. 33296.

*Deutsch & Jewell,* for appellants.

*Brogan & Brogan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a tort action instituted in the district court for Antelope County by Patricia Shupe, a minor, by and through her father and natural·guardian, Belvin Shupe. It was brought against the County of Antelope, the Township of Grant, which is in Antelope County and a part thereof, Penwell & Deckert Construction Company, a copartnership consisting of Charles Penwell

and Lloyd Deckert, and Lloyd Deckert. By this action plaintiff seeks to recover damages arising from personal injuries which she suffered when an automobile in which she was riding as a passenger was driven onto a collapsed bridge.

The action was dismissed as to the County of Antelope and the Township of Grant. No appeal or cross-appeal was taken therefrom. It proceeded to trial against the defendants Penwell & Deckert Construction Company, a copartnership, and Lloyd Deckert. The plaintiff obtained a verdict against them in the sum of $1,000 on which judgment was entered. Defendants filed an alternative motion asking for either a judgment notwithstanding the verdict or for a new trial. This appeal was taken from the overruling thereof.

The collapsed bridge hereinbefore referred to resulted from a 12-ton caterpillar tractor being driven thereon which caused the east end thereof to collapse. This tractor belonged to the appellant copartnership and was being operated at the time by appellant Deckert, a member thereof. This bridge, which is 16 feet long and across a dry watercourse, is part of township road No. 202, which is a dirt road over which the board of Grant Township had general supervision. See § 39-401, R. R. S. 1943. It was the duty of the board to maintain and keep it in repair, including all bridges therein not over streams, so it would be fit for travel by the public. See § 39-803.05, R. R. S. 1943. In this regard the township did not have a road overseer nor, apparently, had they selected one of their members to be the township highway superintendent as provided for by section 39-401, R. R. S. 1943. It is apparent the members of the board, as such, performed these duties themselves.

The incident referred to happened about 1:30 p. m. on Wednesday, April 26, 1950. It resulted in the east end of the bridge resting upon the bottom of the dry watercourse some 4 feet below the level of the road. It happened when the tractor was being driven from one

field to another while being used to do some soil conservation work for Vernon Oelsligle, a farmer living adjacent thereto.

The rule adopted in this state is: "* * * when one engaged in the lawful use of the highway causes an obstruction to be placed upon it in such a manner as to be dangerous to traffic, he must use ordinary care to prevent injury to others' where he knows that said obstruction is calculated to do injury to travelers upon said highway. The negligence in such a case consists of having placed an obstruction upon the street, and leaving it in such a manner as will be dangerous to others using the street." Simonsen v. Thorin, 120 Neb. 684, 234 N. W. 628, 81 A. L. R. 1000.

An obstruction, in the sense here used, includes anything which will interfere with the public's reasonable use of the highway easement.

Whether or not appellant Deckert was guilty of any negligence in the first instance is not here material for, as stated in Simonsen v. Thorin, *supra:* "Whoever places an obstruction in a public highway, even by an involuntary act and without negligence, is under an obligation to remove such a nuisance from the highway or is required to use ordinary care to warn the traffic on said highway of the dangers incident to said obstruction."

Appellants had no authority over the bridge and consequently no authority to remove the obstruction by repairing it. That was the duty of the board of Grant Township. See § 39-803.05, R. R. S. 1943. The first question is, did appellant Deckert use ordinary care to immediately warn the public using the road of the danger created by the collapsed bridge?

After the bridge collapsed appellant Deckert was able to and did remove the tractor therefrom. He then used his tractor to level off the ditch north of the road and bridge. He fixed it so this ditch could be used as a road and thus made it possible for the traffic on the road to

travel around the collapsed bridge. He and Vernon Oelsligle, for whom he was doing the conservation work, then placed a barbed wire across each end of the bridge by fastening it to the ends of the railings thereon, which railings were about 3½ to 4 feet high. They then fastened at least one greasy rag, approximately 8 by 10 inches, on each of these wires at about the center. They also placed a length of plank 3 by 12 inches in dimension in an upright position at the east end of the bridge and a piece of a similar dimensioned plank, about 6 inches wide, at the west end of the bridge. These pieces of plank, which were placed at about the center of each end of the bridge, extended some 3 to 3½ feet above the level of the road surface. Without question the warnings so placed immediately following the collapse of the bridge were adequate to warn all traffic traveling on this road in the daytime but could reasonably be found to be inadequate for that purpose for those traveling at night.

About 4 p. m. on the same day appellant Deckert looked for and found Frank Spiekermann, a member of the Grant Township board. He found him in Tilden, Nebraska, which is about 5 miles from the bridge. He advised Spiekermann of what had happened and what he had done. Spiekermann testified he told Deckert, "* * * we (meaning the township board) would take care of it" and that, "* * * we (meaning the township board) would put up something more proper." Deckert testified Spiekermann told him, "I'll go out and look at it, and get some steel posts and put up a barricade." The evidence is undisputed that by 4 p. m. of the day the bridge collapsed Spiekermann, a member of the township board, was fully informed of what had happened and, in his capacity as a member thereof, assured appellant Deckert that the board would take charge of the situation.

The evidence shows Spiekermann went out to the bridge sometime before 5 p. m. on the same day and looked over the situation. He then went to see and talk

with Fred Nelson, another member of the township board, on whose place most of the township's road material was kept. Spiekermann advised Nelson of the fact that the bridge had broken down. Nelson then advised Spiekermann he would go over as soon as he could. However, Nelson did not go over until after the accident occurred in which appellee was hurt, although Fred Lindahl, the other member of the township board, had called him in regard thereto prior to that time. The record shows that although all the members of the township board knew of the condition of the bridge long prior to the accident in which appellee was hurt there was nothing done by the township board, or any member thereof, to put up any additional warnings. Consequently, the only warnings put up were those appellant Deckert put up immediately following the collapse of the bridge.

Sometime between 8:15 and 8:30 p. m. on Sunday, April 30, 1950, more than 4 days after the bridge had broken down, appellee was riding in a 1934 Chevrolet coach which her father was driving. It was dark at the time. They were traveling east on township road No. 202 just west of this bridge. As already indicated there had been no barricades, flags, flares, or any other warnings placed to warn of the condition of the bridge other than those which appellant Deckert had placed there. In the absence of such warnings, appellee's father did not see the condition of the bridge until his front wheels were just on the west end thereof. He was not able to avoid crashing into the east bank. Appellee, who was riding in the back seat, received injuries as a consequence. Appellee could, under the situation here, not be charged with the conduct of her father if, by any standard, it could be said he was negligent.

As already stated, appellant Deckert did use ordinary care to prevent injury to others in the first instance because, without question, the warnings he put up were sufficient to notify the traveling public of the dangers

created by the collapsed bridge as long as it remained daylight. But, as said in Simonsen v. Thorin, *supra,* this is a continuing duty; that is, until he has done all that any ordinarily prudent person would have done under the same circumstances.

The primary question then is, was appellant's continuing duty to see that the public was adequately warned of an obstruction in a public road in the form of a broken-down bridge, which bridge had broken down while he was using it, satisfied when he notified the public officers, whose duties placed them in charge thereof, of its condition and after these officers had advised him they would take care of it and had had a reasonable length of time in which to do so before the accident happened out of which the injuries were received?

Negligence is the doing of something which an ordinarily prudent person would not have done under the same or similar circumstances, or the failure to do something which an ordinarily prudent person would have done under the same or similar circumstances. See, Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250; Buchanan v. Rose, 138 Tex. 390, 159 S. W. 2d 109.

In this regard: "Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated." 1 Shearman & Redfield on Negligence (Rev. ed.), § 24, p. 50.

Appellant Deckert notified the public officers in charge of this road and bridge, and who had authority to act in regard thereto, of what had happened and what he had done. They told him they would take care of it and put up something more proper.

We have said: "It is a presumption of law that public

officers will perform their public duties." In re Application of Chicago, B. & Q. R. R. Co., 138 Neb. 767, 295 N. W. 389. See, also, In re Application of Chicago, B. & Q. R. R. Co., 152 Neb. 352, 41 N. W. 2d 157.

Appellant had a right to rely on this presumption and cannot be charged with the failure of these public officers to perform their duties.

As stated in 1 Shearman & Redfield on Negligence (Rev. ed.), § 24, p. 61: "Reasonable anticipation ordinarily permits reliance upon the care of others. A person is not negligent in failing to anticipate that another person will be negligent."

In regard to this continuing duty, we said in Simonsen v. Thorin, *supra:* "They had a positive, continuing duty to the public traveling the street to warn of this danger. The situation in such a case is not unlike that of a private contractor who opens up an excavation in the street, which is a lawful act and done without negligence, but he is required to use ordinary care in preventing injury to others."

But we have said of such private contractors that when there was an actual acceptance of the work this relieved him from any further duty in this regard. As stated in Haynes v. Norfolk Bridge & Construction Co., 126 Neb. 281, 253 N. W. 344: "We think, beyond question, this amounted to a tentative and actual acceptance and relieved the contractor from any further duty to maintain lights, guards or other warning signals after that date." See, also, 13 A. L. R. 2d 199. Certainly the same situation existed here when the officers of the township were informed of the situation and agreed to put up something proper and had a reasonable length of time in which to do so.

We find, as a matter of law, that when appellant Deckert contacted the public officials, who had supervision and control of this road and bridge, and advised them of what had happened and what he had done and they, in turn, advised him they would take care of the

situation and had a reasonable time in which to do so that he did all any reasonably prudent man would or should have done under the circumstances. It cannot be said that he could be found negligent because of his failure to anticipate these public officials would be negligent in the performance of their duties.

Appellee contends that there is evidence from which a jury could find that appellant Deckert was negligent in the first instance in causing the bridge to collapse and consequently, on the basis of joint liability, could be held liable although the township officials may have been negligent in failing to put up proper warning signs to warn those traveling at night of the dangerous condition.

As stated in Schweppe v. Uhl, 97 Neb. 328, 149 N. W. 789: "An act wrongfully done by the joint agency or co-operation of several persons, or done contemporaneously by them without concert, renders them liable jointly and severally." See, also, Bosteder v. Duling, 115 Neb. 557, 213 N. W. 809.

"But if the acts or neglects were not concurrent in time, and the party last in fault was chargeable with some duty to the other which, if performed, would have prevented the injury, the law will attribute to his culpable conduct the injurious consequence, and refuse to look beyond it." Cooley on Torts, § 52, p. 133.

However, this question is not material here for the duty to warn arises regardless of whether the obstruction in the highway was caused by conduct which was or was not negligent. See, Simonsen v. Thorin, *supra*. But assuming, for the sake of discussion only, that it could be found that appellant Deckert's actions in relation thereto could be found negligent they would still have to be a proximate cause of the accident in which appellee was injured.

We said in Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825, in discussing proximate cause, that:

"Proximate cause, as used in the law of negligence,

is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred.

"An efficient intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act.

"An alleged cause of an accident may sometimes be merely a condition and not the real cause. The activities of inanimate things are usually mere conditions and not causes. Atlantic Coast Line R. Co. v. Daniels, 8 Ga. App. 775, 70 S. E. 203."

In Frerichs v. Eastern Nebraska Public Power Dist., 154 Neb. 777, 49 N. W. 2d 619, by quoting from Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117, we held: " '* * * It is not sufficient that the negligence charged does nothing more than furnish a condition by which the injury is made possible, and if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury.' " And then went on to say: "Under the rule if the negligent act creates a condition from which injury flows only by a subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not a proximate cause of the injury."

As stated in Gordon v. Bedard, 265 Mass. 408, 164 N. E. 374: "The causal connection is broken if between the defendant's negligent act and the plaintiff's injury 'there has intervened the negligence of a third person who had full control of the situation and whose negligence was such as the defendant was not bound to anticipate and could not be said to have contemplated, which later negligence resulted directly in the injury

to the plaintiff.' Ladd v. New York, New Haven & Hartford Railroad, 193 Mass. 359, 363."

And as stated in Rulane Gas Co. v. Montgomery Ward & Co., 231 N. C. 270, 56 S. E. 2d 689: " 'Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause.' Powers v. Sternberg, 213 N. C. 41, 195 S. E. 88."

Even assuming that appellant Deckert's conduct in driving his 12-ton tractor onto this bridge could be found to be negligent, which we seriously doubt but which we do not decide, it would not be sufficient, under the factual situation here present, on which to base a recovery in view of the foregoing principles.

In view of what we have herein said, we find the cause should never have been submitted to a jury and that therefore appellants' motion for a judgment notwithstanding the verdict should have been sustained. We reverse the judgment of the trial court and remand the cause to the district court with directions to sustain appellants' motion and dismiss the action.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

YEAGER, J., dissents.

SIMMONS, C. J., dissenting.

I dissent.

I see no reason to discuss the question of the sufficiency of the warnings placed by defendants so far as daylight is concerned, for this accident to plaintiff happened at night.

The court apparently concedes that the liability of the defendants as to sufficiency of warnings would normally be a jury question, but holds as a matter of law that that liability was severed, because of notice to members of

the township board and their agreement to put up adequate warnings and take care of the matter and the lapse of a reasonable time in which to do that before the accident happened; and that the failure of the township officials to do anything was an intervening independent act of negligence which, ipso facto, relieved defendants of liability.

Although I do not deem it as a law matter of controlling materiality here, yet we should keep our facts straight. The court says that the township officers advised the defendants "they would take care of it" and "agreed to put up something proper." The court's recital of facts shows that *one* township official, acting without concurrence of the others, and by defendants' testimony, speaking in the first person, singular, so advised the defendants, and that notice of the condition of the bridge was gotten to the other members before the accident.

I do not question the duty of the township officials to do something about the bridge—but the question here is the duty and liability of the defendants in the matter.

The court quotes from Simonsen v. Thorin, 120 Neb. 684, 234 N. W. 628, 81 A. L. R. 1000, and stops with that case. We there held:

"When one engaged in the proper use of a highway causes an obstruction to be placed upon it in such a manner as to be dangerous to traffic, he must use ordinary care to prevent injury to others where he knows that such obstruction is calculated to do an injury to travelers upon said highway.

"The negligence in such a case is, after having placed an obstruction in the highway, to leave it in such a manner as will be dangerous to others using the highway.

"Whoever places an obstruction in a public highway, even by an involuntary act and without negligence, is under obligation to remove such a nuisance from the highway or is required to use ordinary care to warn the

traffic on said highway of the dangers incident to said obstruction."

We there held that the creation of the obstruction was the creation of a nuisance and that the negligence consisted in having placed an obstruction upon the street and leaving it in such a manner as to be dangerous to others using the street. In Swinford v. Finck, 139 Neb. 886, 299 N. W. 227, we held that failure in a reasonable time to remove the obstruction, or failure to reasonably warn of the dangerous condition of the highway would be actionable negligence.

We followed Simonsen v. Thorin, *supra,* in Grantham v. Watson Bros. Transportation Co., on rehearing, 142 Neb. 367, 9 N. W. 2d 357, quoted with approval the rule first quoted above, and held that the defendant owed the duty of ordinary care to prevent injury.

In Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682, we held: "A failure to so warn the traveling public is continuing negligence as distinguished from a condition, and if reasonable minds could conclude from the evidence that such negligence proximately caused an accident, then the issue should be submitted to a jury for its determination."

The court here recognizes that the rule is, as stated in Simonsen v. Thorin, *supra,* that this is a continuing duty. Obviously the continuing duty arises because the obstruction is continuing, and as we held in Kuska v. Nichols Construction Co., *supra,* "is continuing negligence as distinguished from a condition." The court now by three quotes from decisions dealing with "conditions" clouds the meaning of what heretofore has been a clearly stated rule.

We have then here a case where clearly under our holdings the negligence of the defendants was continuing, up to and including the time of the accident to plaintiff.

There is no attempt here to charge the defendants with the failure of the township officials to do their duty,

as the court infers. There is an attempt here to charge the defendants with the failure to do their own duty in the premises.

But the court holds that the fact that defendants gave notice to the members of the township board, had a promise by one of them to take care of it, and because the board had a reasonable time to do it, *as a matter of law* that constitutes all that any reasonably prudent man was required to do.

Obviously it is the lapse of time, in this instance 4 days including a Saturday and Sunday, which the court concludes is the controlling element which relieves the defendants of liability as a matter of law, and that in any event the failure of the township board to do anything in that 4 days was as a matter of law the proximate cause of this accident.

The court cites and quotes from Haynes v. Norfolk Bridge & Construction Co., 126 Neb. 281, 253 N. W. 344. In that case a contractor had performed his work of installing culverts and it had been accepted by the state. Thereafter plaintiff's car at night ran into the end of culverts not covered by dirt. Plaintiff's theory was that the defendant's work had not been accepted by the state and that the defendant had a duty to erect barriers or warnings. The case turned upon the question of acceptance. We held that the work had been accepted and that the contractor had no further duty to maintain warnings. We there specifically held: "There is no evidence in the record that there were any defects in the work performed by the Norfolk Company, or that it failed in any respect to comply with the plans and specifications of the contract." In short, we held that there was no negligence chargeable to the defendant which required it to continue to maintain warnings. That case is not this case.

Restatement of the Law states the applicable rule as follows:

"Failure of a third person to perform a duty owing

to another to protect him from harm threatened by the actor's negligent conduct is not a superseding cause of the other's harm.

"The fact that the third person has failed to perform his duty to protect the other from harm threatened by the actor's negligence, implies that, had the duty been performed, it would have prevented the actor's negligence from causing the harm which results from it. In order that there can be a failure of a duty of protection the person owing it must have either the opportunity to perform it or at least he should have had such an opportunity had he been reasonably attentive to his surroundings. The third person's failure to perform his duty in this respect makes him concurrently liable with the negligent actor for any harm which results from the actor's negligence and which would have been prevented by the performance of the third person's duty." Restatement of the Law, Torts, § 452, p. 1206. The following illustration of the rule is given: "2. A, the owner of a house abutting on a city street, employs B to dig a trench across the highway to make connection with a sewer. B does the work of replacing the sidewalk so negligently as to make the sidewalk dangerous for travel. A, though knowing of this, takes no steps to put the sidewalk in safe condition. Several weeks after B has left the job as completed, C, without negligence, is hurt by the bad condition of the pavement. A's failure to have the sidewalk repaired makes him liable to C but is not a superseding cause relieving B from liability to A."

38 Am. Jur., Negligence, § 67, p. 722, states the rule as follows: "The test of the sufficiency of an intervening cause to defeat recovery for negligence is not to be found in the mere fact of its existence, but rather, in its nature and the manner in which it affects the continuity of operation of the primary cause, or the connection between it and the injury. * * * In order to be effective as a cause superseding prior negligence, the

new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result; a cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result, that reasonably might not have been anticipated. * * * The test is whether the intervening efficient cause was a new and independent force, acting in and of itself in causing the injury and superseding the original wrong complained of, so as to make it remote in the chain of causation, * * *."

In 65 C. J. S., Negligence, § 111, p. 693, the following rule is stated: "An intervening cause, in order to break the causal connection between the original negligence and the injury, must come into operation in producing the result after the negligence of the original actor; and, if the original negligence continues to the time of the injury, an intervening act will not relieve the original actor of liability."

1 Shearman & Redfield on Negligence (Rev. ed.), §§ 37 and 38, p. 101, states the rule as follows:

"If the force which causes the injury is put in operation or motion by what is the negligence of the defendant, and that force or motion is still in progress or operation and has not lost its identity and continuity as such when the injury occurs, then the negligence which puts the injurious force in operation is the proximate cause.

"In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause. It is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury."

From the many cases cited in the texts I refer to three because of the factual situations involved.

Shewell v. Borough of Narbeth, 54 Montgomery Coun-

ty Law Reporter 375, is a decision of an intermediate court. I cite it because of the law cited and reasoning in it. In this case the owners of a truck broke off a wooden standard, allowing a stump to remain in a sidewalk. Two months and 17 days thereafter plaintiff fell over the stump and was injured. The question was as to the liability of the owners of the truck. The court held: "The mere passage of time will not relieve the wrongdoer from liability, * * *. It was the duty of the borough to keep the highway, including the sidewalk and the plot between the curb and sidewalk, in reasonably safe condition for use by the traveling public. If the stump of the standard constituted a dangerous hazard to the users of the highway, and the borough had actual or constructive notice of the existence of the nuisance, the borough would be guilty of negligence.

"Assuming as we must for our present purpose, that the stump created a dangerous condition in the highway, and that the borough had notice of the same; was the negligence of the borough in permitting the condition to remain, the proximate cause of the plaintiff's injury?" The court quoted Restatement of the Law, Torts, § 452, p. 1206, and then held: "* * * the negligence of Nepi Brothers in creating the dangerous condition in the highway, was the active negligence, and the negligence of the borough in permitting it to remain, the passive negligence."

In Diehl v. Fidelity-Philadelphia Trust Co., 159 Pa. Super. 513, 49 A. 2d 190, steam coming from a building owned by one defendant formed ice on the sidewalk in front of a building of a second defendant. The owner of the second building had notice of the ice and failed to remove it. The court held that the failure of the owner of the second building was a "clear breach of the duty" but that its failure to perform its duty was not a superseding cause of harm resulting from the negligence of the owner of the first building, that the negligence of the owner of the first building "was not

insulated" by the intervening negligence of the owner of the second building, and that both defendants were jointly and severally liable. The court quoted Restatement of the Law, Torts, § 452, and cited Restatement of the Law, Torts, §§ 440 and 447.

In Holmes v. T. M. Strider & Co., 186 Miss. 380, 189 So. 518, 123 A. L. R. 1190, the defendant had been hired to do work on a bridge. In doing it defendant removed certain hand or guardrails and posts. He was then in April 1937 ordered to replace the handrails, guards, and posts, open the bridge to traffic, and to discontinue work. He replaced the guardrails and posts in a negligent manner. In August the highway department did work on the bridge but did not alter the condition of the guardrails. Still later the plaintiff, a guest in an automobile, was injured because of the negligent work of defendant. The court, holding the defendant liable, followed the rule that: "* * * 'where an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act.'"

On these authorities I would hold the duty of the defendants being a continuing one, as the court holds, that the question of whether or not defendants exercised due care to reasonably warn of the dangerous condition of the highway, which they created, was, at least, a jury question. On that feature of the case I would affirm.