STERLING G. GILLIAM, ANCILLARY ADMINISTRATOR OF NORMA ESTER MADAK, DECEASED, PLAINTIFF v. PROPST CONSTRUCTION COMPANY, DEFENDANT, AND MICHAEL MADAK AND DAVID KING, ADDITIONAL DEFENDANTS.

(Filed 12 January, 1962.)

1. Highways § 7—

A contractor constructing a highway in conformity with plans and specifications prepared by the Highway Commission may not be held liable because a curve on a segment of such highway was too sharp to be traversed by a vehicle at a speed in excess of 25 miles per hour.

2. Same—

Where a portion of a highway is opened to public use after the Highway Commission, in the exercise of its statutory duty, had erected such signs thereon as it thought proper, G.S. 136-30; G.S. 136-32, the duty of the company constructing the highway to maintain barricades, danger signals, and signs thereon terminates, and thereafter the contractor may

not be held liable on the ground that the injury in suit was the result of its negligent failure to maintain a warning sign of a curve that could not be traversed by a vehicle traveling in excess of 25 miles per hour.

PARKER, J. dissents.

APPEAL by plaintiff from *Bundy, J.,* June 1961 Civil Term of VANCE.

This is an action to recover damages for personal injuries to and wrongful death of plaintiff's intestate, who suffered injuries resulting in death when the automobile in which she was riding ran off an embankment on U. S. Highway No. 1 on the night of 27 December 1957.

The asserted liability of defendant Propst Construction Company, hereafter referred to as defendant, is based on plaintiff's allegation that defendant, having control of the highway because of its contract for construction, negligently failed to give motorists using the road adequate and timely warning by signs or barricades of the hazardous condition created by the construction, which failure to warn caused the driver of the motor vehicle in which plaintiff's intestate was riding to run off the highway.

At the conclusion of the evidence for plaintiff and defendant, it renewed its motion for nonsuit. The motion was allowed and plaintiff appealed.

*Blackburn & Blackburn for plaintiff appellant.*
*Perry & Kittrell for Propst Construction Company.*

RODMAN, J. Appellant assigns several errors, but the basic question is this: Does the evidence, viewed in the light most favorable to plaintiff, suffice to impose a duty on defendant to warn of the specific hazard complained of? Unless this question can be answered in the affirmative, the judgment must be affirmed.

Necessarily the answer requires a review of the evidence. Summarized, the evidence shows these facts: The Highway Commission, desirous of facilitating the flow of traffic on U. S. 1, in the summer of 1957, contracted with defendant to construct the road at a new location so as to by-pass Henderson. The work to be done covered a distance slightly in excess of 10 miles. U. S. 1 is a north-south highway. Highway 158 is an east-west road. On and prior to 27 December 1957 these roads merged into a single highway near Greystone, three miles northeast of Henderson. From the point of merger they continued northeastwardly as a single highway some 10-12 miles to Norlina. The junction of 1 and 158 near Greystone was the northern terminus of defendant's work. The southern terminus was near Kittrell, some seven miles south of Henderson. To facilitate the movement

of traffic at the junction, the contract required the construction of a bridge over 158, a short distance west of the point where the two roads merged. Traffic moving north but desiring to go west on 158 would proceed up a ramp and pass over this bridge, then down an arc or. semicircle and into 158 headed westwardly and in the right or northern lane. It thus permitted such travelers to pass over eastbound traffic on 158 rather than intersecting it at that level. The bridge was about 14 feet above 158. The radius of the semicircle leading down from the bridge to 158 was short, resulting in a sharp right curve and decline. (The record does not disclose the length of this arc or the grade.) Traffic moving north and expecting to continue on No. 1 would not use the overpass. Such traffic would remain in its right-hand lane, curving eastwardly at ground level to the junction of 1 and 158. Southbound travel from Norlina would use the ramp to pass over 158. The ramp on the south side of the bridge was straight. The curve was on the north side. Travel from Norlina wishing to go west on 158 would remain at ground level, continuing in its right-hand lane, and pass under the bridge. The road, as designed by the Highway Commission, permitted all traffic to remain in its right-hand lane without having to cross another line at ground level.

The contract between the Highway Commission and defendant contained these provisions: "The contractor shall maintain the work during construction and until the work is finally accepted."

"The time of actual completion of a project shall be considered the date on which all work has been satisfactorily completed in accordance with the contract and these specifications."

"The contractor shall at all times so conduct his work as to insure the least possible obstruction to traffic. The safety and convenience of the general public and the residents along the highway and the protection of persons and property shall be provided for by the contractor at all times."

"The contractor shall provide, erect, and maintain all necessary barricades, suitable and sufficient red lights, danger signals, detour and other signs, provide a sufficient number of watchmen and take all necessary precautions for the protection of the work and the safety of the public."

"The contractor shall indemnify and save harmless the commission . . . because of any act or omission, neglect, or misconduct of said contractor."

"The contract will be considered complete when all work has been finished, the final inspection made by the Engineer, and the project accepted by the Commission. The contractor's responsibility shall then cease, except as set forth in his bond."

"When any project, or portion thereof, or any structure, has been completed, it may be opened to traffic, if and as deemed expedient by the Engineer. Such opening shall not be held in any way a final acceptance of the work or any part of it or a waiver to any provisions of the contract."

Plaintiff began work in the summer of 1957. The work was accepted and final payment made in the summer of 1958. Defendant, having completed its work except for the construction of some drains and other details not related to the movement of traffic over the road, requested permission from the Highway Commission to suspend operations until the weather improved in the spring. At that time traffic was prevented from using the overpass by blockades.

Acting on this request, the Highway Commission erected traffic signals at points selected by it. This was done on 21 December 1957. When these signs had been erected, the barricades were removed and the road opened for traffic.

On the afternoon of 27 December 1957 plaintiff's intestate, hereafter abbreviated to plaintiff, her husband, Michael Madak, and her kinsman, David King, left Fort Bragg in her husband's automobile. Their destination was Detroit, Michigan. The husband drove from Fort Bragg to a point just north of Raleigh. There he changed places with King, who was driving at the time of the accident which happened about 7:00 p.m. Plaintiff was in the back seat. King testified: "We planned to follow U.S. #1 from Raleigh to Richmond. As we approached Henderson, we drove on the by-pass around the town. The surface of this road was very dark asphalt. The surface of the road was smooth and sufficiently wide for our travelling purposes, and the road was in good condition the whole length of the by-pass. I do not remember the bridge or seeing the concrete guard rails on the bridge, but I do remember the incline. I observed one speed sign which I would say was a quarter or half a mile in distance back from the scene of the accident. I might have seen other signs but I was looking for signs pointing to Richmond where I was going. I did not see a Route #1 sign directing traffic off to the right, or a second sign directing traffic to U.S. 1 to turn to the right. I might have seen a sign with the name 'Norlina' and an arrow pointing to the right but I did not know where Norlina was. I cannot say positively that I did see that sign, nor did I see the sign that read 'Stop Sign Ahead' in the vicinity of the accident. I was traveling at a speed between 45 and 50 m.p.h." He further stated that he did not see any signs of any description.

There was evidence that the posted speed limit at the point refered to by King was 55 m.p.h., but a safe speed to negotiate the curve and decline from the bridge to enter 158 would be 25 m.p.h., and the

vehicle in which plaintiff was riding ran off the road because of the inability of the driver to negotiate the curve and decline at the speed at which he was travelling.

At the time of the accident, King, the driver, should have seen on the right-hand side of the road, if he had been observant, standard highway signs erected by the Commission which gave the following information: (1) A sign saying Junction 158. This sign was located some 1000 feet or more south of the point where U.S. 1 divided; (2) 300 to 500 feet north of the junction sign, a sign showing that Route 1 had a right turn or curve, No. 158 west was straight ahead, 158 east likewise had a right turn or curve; (3) about 300 feet north of the second sign a sign with directions similar to those on the second sign; (4) at the point where the right and left lanes of U.S. 1 separated a sign with an arrow pointing to the right with the word "Norlina"; (5) at the south end of the bridge and on the right or east side a sign reading "Stop Sign Ahead."

Had King been attentive and observed the signs, he would have remained in the right lane and not gone on the overpass.

Plaintiff does not allege and there is nothing in the record to suggest that there was any defect in the manner in which defendant executed the work included in his contract with the Highway Commission. Such hazard as existed was caused by the short radius of the curve designed by the Highway Commission. A vehicle could not remain on the curve at a speed of 45 m.p.h.

The State Highway Commission is given general supervision of all matters relating to the construction of State highways, letting of contracts therefor, and the selection of materials to be used in the construction of these highways. G.S. 136-18. The Commission is authorized by statute to fix reasonable and safe speeds under special conditions and to indicate these safe speeds by appropriate signs. G.S. 20-141(d).

Tort liability cannot be imposed on a contractor who constructs a road conforming to plans and specifications prepared by the Highway Commission merely because such road cannot be safely used at a speed in excess of 25 m.p.h.

As said in the notes to *Taylor v. Westerfield*, 69 A.L.R. 482 (490): "One who contracts with a public body for the performance of public work is entitled to share the immunity of the public body from liability for incidental injuries necessarily involved in the performance of the contract, where he is not guilty of negligence." *Moore v. Clark*, 235 N.C. 364, 70 S.E. 2d 182; 40 C.J.S. 208; 27 Am. Jur. 532.

Since there is neither evidence nor suggestion of dereliction of duty in the manner in which defendant constructed the road, the only basis on which liability can be predicated is the assertion that defendant ow-

GILLIAM *v.* CONSTRUCTION CO.

ed plaintiff a duty to warn the public that the road constructed in accordance with the Commission's plans could not be used at a speed in excess of 25 m.p.h. We are of the opinion and hold that no such duty was imposed on the defendant when the Highway Commission accepted the work by directing that it be opened for traffic, posting such signs thereon as it deemed proper.

The contract provision requiring the contractor to erect barricades and other warning devices relates to hazards created by the contractor in performance of his work. These provisions of the contract were not intended to impose the duty on the contractor to warn of dangers resulting from the use of the completed project.

The contract contained a specific provision authorizing the Highway Commission to open to public use completed portions of the work. The evidence shows the road was not opened to public use until the Highway Commission, in the exercise of its statutory duty, had erected such signs as it thought proper. G.S. 136-30, 32. When so opened, defendant's responsibility to the traveling public to warn about conditions on the opened area terminated. *Haynes v. Norfolk Bridge & Construction Co.,* 253 N.W. 344; *Rengstorf v. Winston Bros. Co.,* 208 N.W. 995; *Cunningham v. T. A. Gillespie Co.,* 135 N.E. 105; *Memphis Asphalt & Paving Co. v. Fleming,* 132 S.W. 222; *Armstrong v. City of Tulsa,* 226 P. 560; *Tidewater Const. Corp. v. Manly,* 75 S.E. 2d 500. The Highway Commission's determination of what signs should be erected for the information of the traveling public was exclusive once it authorized the opening of the road for public use. G.S. 136-30, 32.

Of course such an opening did not relieve defendant of its contractual obligation to the Highway Commission. It merely relieved defendant of its duty to inform the traveling public as to how such completed portion might be used. Its duty to warn of dangers relating to an unopened portion, if any, continued to exist.

Affirmed.

PARKER, J., dissents.